72547. CLUB PROPERTIES, INC. et al. v. ATLANTA OFFICES-PERIMETER, INC.
(348 SE2d 919)

CARLEY, Judge.

Appellant-defendants Club Properties, Inc. and Mr. Gene Eidelman (Lessees) entered into a written lease agreement with appellee-plaintiff Atlanta Offices-Perimeter, Inc. (Lessor). The lease was for a six-month term, commencing on January 1, 1984 and ending on June 30, 1984. The lease also provided that the Lessor would make certain services, including the use of its own employees, available to the Lessees "and there shall be no charge for same." Paragraph 16 of the agreement provided: *"Employment of Lessor's Employees.* Lessee recognizes that Lessor has expended considerable time, effort and expense in training Lessor's employees so as to provide high quality service to Lessee, and that the hiring by Lessee of Lessor's employees would save Lessee considerable time and expense in training and procurement. Lessee further acknowledges that were Lessee to hire any such employees, Lessor would be forced to expend additional time, effort and expense in training new employees, the amount of which cannot be determined with certainty. Therefore should Lessee offer employment to and subsequently employ any employee of Lessor who was an employee of Lessor at any time during the six month period immediately preceding the offer of such employment by Lessee, Lessee shall pay to Lessor as a procurement fee the sum of $5,000.00."

At the end of the lease term, the Lessees vacated the premises and moved to another location. In July of 1984, Ms. Rosemary Fletcher began work as the Lessees' office manager. Ms. Fletcher had terminated her employment in the Lessor's secretarial pool only the preceding month. As the result of Ms. Fletcher's new employment, the Lessor demanded payment of $5,000 from its former Lessees pursuant to Paragraph 16 of the lease. When this demand was refused, the Lessor instituted the instant action, seeking to recover under that

provision of the lease. The Lessees answered and subsequently moved for summary judgment on the ground that Paragraph 16 of the lease was unenforceable as a restraint of trade. The trial court denied the Lessees' motion, holding that Paragraph 16 was a valid and enforceable liquidated damages provision. The trial court certified its order for immediate review and the Lessees applied to this court for an interlocutory appeal. The application was granted and this appeal results.

1. That Paragraph 16 of the lease may purport to be a liquidated damages provision, rather than a personal covenant enforceable in equity, is not dispositive. It is the legal effect of a contractual provision, not the parties' specified manner of enforcement of the provision, that determines enforceability vel non. Notwithstanding the fact that a liquidated damages provision represents the parties' agreement as to compensation for a breach of contract, if the underlying contract itself violates some principle of law, the liquidated damages provision cannot be enforced. See OCGA § 13-6-7. Pursuant to OCGA § 13-8-2 (a) (2), contractual provisions which are in general restraint of trade are, as a matter of law, unenforceable. Thus, the mere fact that such a provision may happen to be couched in terms of liquidated damages, rather than as the personal covenant of the contracting party, will not suffice to render it enforceable. See generally *T. E. McCutcheon Enterprises v. Snelling & Snelling*, 232 Ga. 609 (212 SE2d 319) (1974) (provision for damages as well as injunctive relief unenforceable); *Heller v. Magaro*, 148 Ga. App. 591 (252 SE2d 11) (1978) (damages for unenforceable covenant not recoverable). Compare *Brown Stove Works v. Kimsey*, 119 Ga. App. 453 (167 SE2d 693) (1969) (a provision for the *loss* of *accrued* employee rights and privileges upon engagement in competitive activity not in restraint of trade).

2. Having determined that a mere contractual specification of relief in the form of monetary damages is not the dispositive factor in determining underlying contractual enforceability, we turn to the issue of whether, when properly construed Paragraph 16 of the instant lease constitutes a restraint of trade. Although the actual agreement is solely that of the Lessees, its limiting effect also extends to any and all of the employees of the Lessor. By its terms, none of the Lessor's employees may enter into a contract of employment with the Lessees for a six-month period unless the Lessees are willing to pay $5,000. The ultimate effect of the provision is thus no different than if the Lessor had secured the agreement of each of its individual employees to forgo the right to contract freely for employment with the Lessees for the six-month period and to negotiate such employment only upon condition of payment by the Lessees to the Lessor of a $5,000 "procurement fee." There is no dispute that, absent the provision, the Lessees and any employee of the Lessor would be mutually free to

negotiate employment without any extraneous conditions whatsoever. The provision is thus unquestionably a restraint on "the freedom of individuals to contract. [Cits.]" *Beckman v. Cox Broadcasting*, 250 Ga. 127, 130 (296 SE2d 566) (1982). What has, in effect, been secured is the agreement of the Lessees that they will not "compete" freely in the marketplace for the Lessor's skilled employees. We can perceive no meaningful difference between such an agreement and the covenant of an individual that he will not compete for another's business customers. Highly trained employees, no less than customers, may constitute a valuable asset to any business which operates as an ongoing provider of skilled services. An agreement which purports to limit the freedom to compete for such a business asset by imposition of a "procurement fee" would appear to be no less than a monetary restraint on competition in the skilled services trade.

The instant agreement is admittedly somewhat limited in scope. The Lessees are otherwise entirely free to offer employment to anyone, and, likewise, the Lessor's employees are otherwise free to offer themselves for employment on unconditional terms. Moreover, the provision requires only a six-month hiatus between former employment by the Lessor and subsequent employment by the Lessees. However, these limitations are not factors which enter into the initial determination of *whether* a contractual provision constitutes a restraint of trade. They are factors which are to be considered in connection with the subsequent determination of whether a provision which *does* constitute such a restraint is or is not enforceable. "Although contracts in general restraint of trade are void as being contrary to public policy ([cit.]), a contract concerning a lawful and useful business in *partial restraint of trade and reasonably limited as to time and territory and not otherwise unreasonable is not void.* [Cits.]" (Emphasis supplied.) *Moore v. Dwoskin, Inc.*, 226 Ga. 835, 836 (1) (177 SE2d 708) (1970). As an initial determination, we find that Paragraph 16 of the instant lease does constitute a restraint on free competition in the skilled services trade, insofar as it purports to place a monetary condition on the exercise of the "individual freedom to enter into contracts and to contract as one will. [Cits.]" *Durham v. Stand-By Labor*, 230 Ga. 558, 561 (198 SE2d 145) (1973).

3. The remaining issue is whether Paragraph 16 is enforceable as a partial and reasonable restraint. "In all cases involving covenants not to compete . . . the rule of reason prevails: '[I]f, considered with reference to the situation, business, and objects of the parties, and in light of all the surrounding circumstances . . . the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them, and not especially injurious to the public, the restraint will be held valid.' [Cit.]" *Durham v. Stand-*

*By Labor*, supra at 561. The Lessor does provide the skilled services of its employees, as well as rental space, to its tenants. Accordingly, the Lessor undoubtedly has a legitimate interest in retaining its employees whose training represents a business investment of time and expense. As tenants of the Lessor, the Lessees have had the opportunity to satisfy themselves first hand as to the relative value of the Lessor's investment in training its employees to provide those services but without ever having had to assume any of the responsibilities and obligations of a direct employer. In light of these circumstances, a partial restraint on the Lessees' freedom to hire employees away from the Lessor would not appear to be unreasonable.

However, as a partial restraint of trade, Paragraph 16 must also meet the "rule of reason" as to limitation of time, territory and proscribed activities. "Under the law of Georgia, covenants in restraint of trade may be enforced if they are reasonable as to time and place and are not overly broad as to the activities proscribed. . . ." *Durham v. Stand-By Labor*, supra at 561. Even assuming that the instant provision could otherwise meet the "rule of reason" as to limitation of territory and proscribed activities, it clearly contains no express reasonable limitation as to time of duration. Under the terms of the provision, Lessees would *never* be permitted to hire a new employee without first determining whether he had been employed by the Lessor during the preceding six-month period. This lack of any time limitation in Paragraph 16 renders it "unreasonable and hence unenforceable. [Cit.]" *T. V. Tempo, Inc. v. T. V. Venture, Inc.*, 244 Ga. 776, 779 (262 SE2d 54) (1979). It follows that the trial court erred in denying the Lessees' motion for summary judgment.

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 18, 1986.

Timothy J. Sweeney, Perry A. Phillips, Thomas I. Kent, Jr., for appellants.

*William H. Mathieu, James J. Brissette*, for appellee.