A.L. WILLIAMS & ASSOCIATES; Massachusetts Indemnity and Life Insurance Company, Plaintiffs–Appellees, Counter–Defendants,

v.

Randy STELK; Timothy Hunter; Willard H. Colson, Jr., d/b/a Mid–American Investors, Defendants–Appellants, Counter–Claimants,

Investors Life Insurance Company of Nebraska, Defendant,

Amerishare Investors, Inc., Defendant–Appellant.

A.L. WILLIAMS & ASSOCIATES, INC., Massachusetts Indemnity and Life Insurance Company, Plaintiffs–Counter Defendants–Appellees,

v.

Randy STELK, Timothy Hunter, Defendants–Counter Claimant–Appellant,

Willard H. Colson, Jr., d/b/a Mid–American Investors, Defendant–Counter Claimant–Appellant,

Investors Life Insurance Company of Nebraska, Defendant–Counter Defendant,

Amerishare Investors, Inc., Defendant–Counter Defendant–Appellant.

Nos. 89–8765, 90–8855.

United States Court of Appeals, Eleventh Circuit.

May 18, 1992.

Irwin W. Stolz, Jr., Seaton D. Purdom, Gambrell, Clarke, Anderson & Stoltz, Atlanta, Ga., for Colson.

C.B. Rogers, Rogers & Hardin, Phillip S. McKinney, Peter W. Schneider, Atlanta, Ga., for Stelk, Hunter and Amerishare.

Sidney O. Smith, Jr., Oscar N. Persons, Anne S. Rampacek, Alston & Bird, Atlanta, Ga., for A.L. Williams & Associates, et al.

Jeffrey W. Kelley, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Investor Life Ins. Co.

James D. Meadows, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for amicus curiae.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellants Randy Stelk, Timothy Hunter and Willard H. Colson, Jr., (the "Agents") appeal the district court's entry of a preliminary injunction enjoining them from certain activities related to the sale of insurance. The injunction was issued pursuant to restrictive covenants contained in several employment contracts between the Agents and the appellees, Massachusetts Indemnity and Life Insurance Company ("MILICO") and A.L. Williams & Associates ("Williams"). The Agents seek to set aside the preliminary injunction on the ground that the restrictive covenants at issue are unenforceable under Georgia law. For the reasons which follow, we affirm in part and reverse in part.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

Williams is the exclusive general agent of MILICO, an underwriter of term life insurance incorporated in Massachusetts. Williams and MILICO are owned by the Arthur L. Williams Corporation. The Agents are former members of Williams' sales force who left to start their own insurance companies.

MILICO insurance policies are sold by agents recruited, trained and supervised by Williams. These agents are licensed to use Williams' registered trade name and service mark and are authorized to use Williams' copyrighted materials. Over 200,000 such agents sell MILICO insurance in 49 states, plus Canada, Guam, Puerto Rico, the Virgin Islands and the Northern Mariana Islands.

MILICO insurance is sold through a pyramid-type marketing plan by which Williams' agents both sell and recruit others to sell insurance. Agents, most of whom work part-time, earn commissions from personal sales and the sales of each agent they recruit.

The sales force is organized according to a hierarchy by which "up-line" agents supervise and train the lower level agents they have recruited. Up-line agents are

successful sales agents who have become, in ascending order, regional vice-presidents ("RVP"), senior-vice presidents ("SVP") and national sales directors ("NSD"). Up-line agents are not part of Williams' corporate structure. Rather, their titles are rewards for success. Each up-line agent works full-time and oversees the work of each down-line agent in his or her chain. A new agent is placed in a specific RVP's hierarchy and is trained by the RVP at the RVP's expense. RVPs earn commissions from insurance sales made by each agent in his or her hierarchy.

New recruits must sign two contracts: (1) an independent contractor agreement with Williams called "My Agreement with A.L. Williams & Associates, Inc.," which includes a trademark license agreement ("Williams Agreement"); and (2) a life insurance agent contract with MILICO ("MILICO Agreement"). Agents who become RVPs sign a third contract called "A.L. Williams & Associates, Inc. Agreement for Independent Business of Regional Vice President" ("RVP Agreement").[1] RVPs must reexecute the Williams Agreement and MILICO Agreement concurrently with execution of the RVP Agreement.

The Agreements contain restrictive covenants, which limit the activities of agents who leave Williams' employ. Generally, the covenants prohibit former agents from (1) replacing certain MILICO policies with those of another insurance company; (2) recruiting or attempting to recruit Williams agents into a competitor's insurance company; (3) disclosing the names of Williams and MILICO customers for the benefit of another insurance company; and (4) using the Williams trademark and service mark in a manner not approved by Williams.

During their time of employment with Williams, the Agents each attained the level of at least SVP. Colson, an SVP, left Williams in October 1988. Stelk left in September 1987 as an NSD. Hunter, also an NSD, left in September 1988. While with Williams, the Agents executed numerous agent contracts including the Williams Agreement, MILICO Agreement and RVP Agreement.

After leaving Williams, Colson formed Mid–American Investors ("Mid–America"), an independent insurance company in North Carolina. Stelk and Hunter also formed an independent insurance company, Amerishare Investors, Inc. ("Amerishare"), in Jacksonville, Florida. In late 1988, Mid–America and Amerishare each entered into agency agreements with Investors Life Insurance of America ("Investors"), a wholesaler of insurance products. Investors is a direct competitor of MILICO.

### B. *Procedural History*

Williams and MILICO filed an action in federal district court seeking injunctive relief. In their complaint, Williams and MILICO alleged, *inter alia*, breach of the non-replacement, non-pirating, non-disclosure and trademark covenants in the A.L. Williams, Inc. agreements.

More specifically, Williams and MILICO alleged that the Agents and their agencies, assisted and encouraged by Investors, violated the restrictive covenants in their employment contracts by seeking to recruit members of Williams' sales force and soliciting their customers to replace MILICO policies with those of their own. Williams and MILICO also alleged that Amerishare infringed Williams' trade name and service marks by using them on marketing materials. The district court granted Williams and MILICO a temporary restraining order and later granted their motion for preliminary injunction.

The district court then issued another order upholding the covenants at issue and entered a modified preliminary injunction granting the relief sought by Williams and MILICO as to the Agents and their agencies, but not Investors. This appeal followed.

---

**1.** The Williams Agreement, MILICO Agreement and RVP Agreement shall be referred to individ- ually or collectively as the "Agreements."

## II. STANDARD OF REVIEW

This court reverses a district court's grant of a preliminary injunction only when the district court abuses its discretion. *Planned Parenthood Ass'n v. Miller*, 934 F.2d 1462, 1471 (11th Cir.1991). Findings of fact made in connection with a grant of a preliminary injunction are set aside only if clearly erroneous. *Id.*; Fed.R.Civ.P. 52(a). But where questions of law are presented, we have plenary review over the district court's determinations. *Georgia Power Co. v. Baker*, 830 F.2d 163, 165 (11th Cir.1987).

## III. ANALYSIS

The basis of jurisdiction in this case is diversity of citizenship. A federal court sitting in diversity applies the substantive law of the state in which it sits, in this case, the State of Georgia. *Broyles v. Bayless*, 878 F.2d 1400, 1402 (11th Cir. 1989).

### A. *Restrictive Covenants Under Georgia Law*

Georgia law disfavors covenants tending to limit competition. "By both constitutional and legislative provision, Georgia prohibits contracts or agreements in general restraint of trade." *Howard Schultz & Associates, Inc. v. Broniec*, 239 Ga. 181, 236 S.E.2d 265, 267 (1977); 1983 Ga. Const. art. III, § 6, ¶ 5; Ga.Code Ann. § 13–8–2 (Michnie 1982).[2] This prohibition, however, is not absolute. Covenants against competition contained in employment agreements may be upheld if strictly limited in time and territorial effect, and "otherwise reasonable." *Rash v. Toccoa Clinic Medical Associates*, 253 Ga. 322,

320 S.E.2d 170, 171 (1984); *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 307 S.E.2d 914, 916 (1983).

In its order, the district court found the restrictive covenants at issue were not non-competition covenants. We find this distinction to be of little practical import. No matter the label attached, Georgia courts remain skeptical of employment contracts which inhibit, directly or otherwise, an employee's future ability to compete with a former employer. See *Wiley v. Royal Cup, Inc.*, 258 Ga. 357, 370 S.E.2d 744 (1988); *Walker*, 307 S.E.2d at 916; *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 297 S.E.2d 473 (1982); *Rakestraw v. Lanier*, 104 Ga. 188, 30 S.E. 735 (1898). Moreover, Georgia law expressly forbids contracts which establish or perpetuate any condition "detrimental to free competition in the business of insurance...." Ga.Code Ann. § 33–6–13 (Michnie 1982).

At a minimum, a "rule of reason" test is applied; that is, under Georgia law, covenants in restraint of trade may be enforced if reasonable as to time and place and not overly broad as to the activities proscribed. *Durham v. Stand–By Labor of Georgia, Inc.*, 230 Ga. 558, 198 S.E.2d 145, 148 (1973).

### B. *Georgia's "No Blue Pencil" Rule*

In its order, the district court construed the RVP Agreement only and not the MILICO Agreement, which it found to be "apparently unenforceable." The district court determined that, despite language in the contracts to the contrary, the MILICO Agreement stood apart from the RVP Agreement and had not been incorporated by it.[3] Further, the district court reasoned

---

**2.** Art. 3, § 6, ¶ 5 of the Georgia Constitution forbids the legislature from authorizing "any contract ... which may have the effect of ... defeating or lessening competition."

§ 13–8–2 of the Georgia Annotated Code deems unenforceable as contrary to public policy all contracts in "general restraint of trade."

**3.** The Agreements contain numerous cross-references, securing mutually enforceable rights. For instance, the RVP Agreement states expressly that an RVP is obligated to conduct his business "strictly in accordance with the terms, con-

ditions and obligations of ... any written contract between RVP and MILICO [i.e., the MILICO Agreement] ..." (RVP Agreement, ¶ 1A)

The MILICO Agreement names Williams as a "third-party beneficiary" of the MILICO Agreement, entitling Williams "to enforce all of the provisions of this Agreement against Agent ..." (MILICO Agreement, ¶ 13).

Moreover, the MILICO Agreement provides: Agent agrees that all of agent's obligations contained in this Agreement are for the benefit of the General Agent [Williams] as well as the Company [MILICO] and that the General

that even if the MILICO Agreement had been incorporated by the RVP Agreement, its infirmities would not imperil similar, but less broadly worded covenants found in the other agreements. We disagree with these findings.

■ Georgia courts have refused to adopt a "blue pencil" theory of contract severability.[4] Thus, overly broad covenants may not be salvaged by excising—or "blue penciling"—their unenforceable provisions. If any part of a covenant is unenforceable, the entire covenant must fail. *Schultz*, 236 S.E.2d at 268–69; *Richard P. Rita Personnel Services International, Inc. v. Kot*, 229 Ga. 314, 191 S.E.2d 79, 81 (1972).

The Agents argue that the Agreements comprise an inseparable contractual package, and therefore, the unenforceable provisions of the MILICO Agreement void similar provisions in the other agreements. They reason that when two covenants perform the same function, even though found in separate contracts, both covenants must stand or fall together.

Williams and MILICO argue that the Williams Agreement and MILICO Agreement are separate contracts signed by separate parties, and thus stand as independent agreements. We disagree.

In *Crowe v. Manpower Temporary Services*, 256 Ga. 239, 347 S.E.2d 560 (1986), the Supreme Court of Georgia examined two non-competition covenants contained in separately signed employment agreements.

The first covenant was found in an employment agreement; the other, in a separately signed supplemental agreement. Each performed the same function, but the covenant found in the supplemental agreement was over-broad, and thus, unenforceable. The court struck down both covenants, reasoning:

> [T]he two covenants perform the same function, so, although they are found in separate portions of the document containing the employment agreement and Ms. Crowe signed both covenants, we see them as two parts of the same overly broad covenant. We will not sever the "supplemental agreement" in order to save the valid portions of the restrictive covenant binding Ms. Crowe.

*Id.* 347 S.E.2d at 562.

■ Similarly, the Agreements in the present case contain covenants duplicative in purpose. While differing in scope and separately signed, the covenants are part of a unitary contractual scheme and, as such, we read them together. Failure of any one covenant voids all others of the same type. Therefore, we find the district court erred in severing the unenforceable provisions of the MILICO Agreement from like provisions in the other agreements. All must fail if any one fails.[5]

## C. *The Preliminary Injunction*

The district court's preliminary injunction enjoined the Agents from all activities

---

Agent, Company, or the Assignee of either of them may enforce this Agreement against Agent. (MILICO Agreement, ¶ 2C).

Last, the RVP Agreement explicitly states that it does not supersede either the My Agreement or the MILICO Agreement. (RVP Agreement, ¶ 16L).

4. Georgia's 1990 Restrictive Covenant Act, O.C.G.A. § 13–8–2.1, permits blue-penciling of covenants not to compete. In *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441 (11th Cir. 1991), we interpreted this statute to apply retroactively to covenants signed before the statute's effective date. However, the Georgia Supreme Court has since declared the 1990 Restrictive Covenant Act to be violative of Georgia's Constitution. *Rooney v. Jackson & Coker, Inc.*, 261 Ga.

533, 409 S.E.2d 522 (1991); *Jackson & Coker, Inc. v. Hart*, 261 Ga. 371, 405 S.E.2d 253 (1991). In *Hart*, the Georgia Supreme Court found the Act to be "an effort by the General Assembly [to] breathe life into contracts otherwise plainly void" under Georgia's Constitution and declared it "unlawful and void." 405 S.E.2d at 255. Therefore, we interpret the covenants at issue according to Georgia common law regarding restrictive covenants ancillary to employment contracts.

5. It should be noted, however, that different types of covenants found in one or more agreements can be considered separately, and the invalidity of one type of covenant will not necessarily affect those of a different type. *Kem Mfg. Corp. v. Sant*, 182 Ga.App. 135, 355 S.E.2d 437, 442 (1987).

in violation of the restrictive covenants contained in the Agreements.

■ District courts may issue a preliminary injunction only when the movant can establish the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not disserve the public interest. *Tally–Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir.1989) (per curiam). However, because it is an "extraordinary and drastic measure," a preliminary injunction may not be granted unless the movant clearly satisfies the burden of persuasion as to these four prerequisites. *National Distrib. Co. v. James B. Beam Distilling Co.*, 845 F.2d 307, 309 (11th Cir.1988) (quoting *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983)).

We now look to the covenants themselves, to determine whether the preliminary injunction was properly issued.

### 1. *The Non–Solicitation Covenants*

The Agreements contain covenants restricting a current or former agent's ability to solicit MILICO policyholders to replace MILICO policies with those of another insurance company. These non-solicitation covenants differ somewhat in language and scope, but each is designed to perform the same purpose.

For instance, paragraph 5(A) of the MILICO Agreement's covenant not to solicit provides, in pertinent part, as follows:

> Agent agrees that he will not, at any time during the term of this Agreement and for a period of five (5) years thereafter, directly or indirectly, induce or attempt to induce any policyholder of the Company to terminate, reduce coverage, borrow money against, or replace any policy of insurance issued by the Company or otherwise disturb the relationship between the Company and any of its policyholders.

The Williams Agreement contains a similar non-solicitation covenant. Under it, a new Williams agent promises that:

> ... I will not, directly or indirectly, during the term of this Agreement and for a period of five (5) years thereafter, induce or attempt to induce any policyholder to either terminate, replace, forfeit or lapse any insurance issued by MILICO. During the term of this Agreement this covenant shall apply to all such policies but after termination this covenant shall apply only to such policies upon which I earned a commission or override commission.

Williams Agreement, ¶ 5(C).

The RVP Agreement is more narrowly drawn. It provides that:

> [The] RVP agrees that during the term of this agreement, and for a period of five (5) years thereafter, RVP shall not, directly or indirectly, induce any Policyholder either to terminate, replace, or forfeit or lapse any Life Insurance issued to any Policyholder during the term of this agreement. For purposes of this subsection 11 I the term Policyholder shall mean: (a) if the violation of this subsection 11 I occurs during the term of this Agreement, all Policyholders; and (b) if the violation of this subsection 11 occurs after the term of this Agreement, then the term Policyholder shall be limited to Policyholders for whom Life Insurance was applied for or issued during the two (2) year period preceding termination of this Agreement and upon which Life Insurance sale RVP earned a commission or override commission, and who resided within one hundred fifty (150) miles of the principal office of RVP at the time of issuance of the policy.

RVP Agreement, ¶ 11(I).

■ Covenants not to solicit contained in employment contracts must fail unless strictly limited in time and territorial effect. *Schultz*, 236 S.E.2d at 267; *Guffey v. Shelnut & Associates, Inc.*, 247 Ga. 667, 278 S.E.2d 371, 373 (1981).

■ The non-solicitation covenants found in the MILICO Agreement and the Williams Agreement contain no territorial

limitation whatsoever. As such, they are clearly unenforceable. Because covenants of the same type must stand or fall together, the non-solicitation covenant found in the RVP Agreement is likewise unenforceable.

Since the covenants not to solicit are unenforceable as a matter of Georgia law, we find that the district court erred in granting a preliminary injunction pursuant to them.

### 2. The Covenants Not to Recruit

■ The Agreements also contain provisions barring MILICO agents from soliciting or recruiting other agents for employment with other insurance companies.[6]

Like the covenants not to solicit, these covenants are similar in purpose, but differ in scope. As previously stated, these covenants must be read together and cannot be severed.

In general, Georgia courts disapprove of contracts limiting an employee's right to move freely in the marketplace. "Overly-restrictive covenants in employment contracts ... which place a restraint upon the free movement of employees in the marketplace as opportunity, experience and competition permits is contrary to this court's view of fair competition." *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 242 S.E.2d 135, 138–39 (1978). Moreover, these contracts must be viewed with an eye toward the "interests of individuals in gaining and pursuing a livelihood." *Stand-by Labor*, 198 S.E.2d at 148.

The Supreme Court of Georgia has issued no authoritative statement regarding the interpretation of covenants not to recruit contained in employment contracts. However, a federal court sitting in diversity is "bound to adhere to decisions from the state's intermediate appellate court, absent some persuasive indication that the state's highest court would decide the issue otherwise." *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th

---

**6.** Paragraph 5(B) of the MILICO Agreement provides:

> Agent agrees that he will not, directly or indirectly, while he is associated with the Company or at any time within two years thereafter: (i) induce or attempt to induce any of the Company's agents or employees who comprise the Company's sales forces or any of the agents who comprise A.L. Williams Sales Force (described in paragraph 8), and/or any portion of the Company's or General Agent's administrative staffs to terminate their relationship with the company or General Agent, or induce or attempt to induce any such agents to sell or solicit insurance for any other insurance company or insurance agency; or (ii) to associate in any other insurance business with or hire or engage any of the Company's General Agent's or A.L. Williams sales forces and/or administrative staffs, until after any such individual shall have terminated his employment or association with the Company for a period of at least one year.

The non-recruitment provisions of the Williams Agreement and the RVP Agreement differ from those in the MILICO Agreement. Paragraph 8(E) of the Williams contract provides:

> I agree that I will not, directly or indirectly, during the term of this Agreement and for a period of five (5) years thereafter, solicit or recruit, or attempt to solicit or recruit for employment or for independent contract with any insurance company, insurance agency or any other insurance organization (other than

on behalf of A.L. Williams, Inc. or MILICO during the term of this Agreement), any agent of the A.L. Williams Sales Force.

Paragraph 11(H) of the RVP Agreement provides:

> On account of the facts expressly acknowledged in subsections 11A–11E above, RVP agrees that during the term of this Agreement, and for a period of five (5) years thereafter, RVP shall not, directly or indirectly, solicit or recruit, or attempt to solicit or recruit for employment or for independent contract as a sales representative with any insurance company, insurance agency, insurance cooperative or any insurance organization (other than on behalf of Williams, Inc. and MILICO during the term of this Agreement): (a) if the violation of this subsection 11 H occurs during the term of this Agreement, then any of the A.L. Williams Sales Force who, at the time of termination of this Agreement, or within two (2) years prior to the termination of this Agreement, had their A.L. Williams office (including a residence office) at RVP's principle office or within a one hundred fifty (150) mile radius of RVP's office as it existed at any time within two (2) years prior to termination of this Agreement and as changed by RVP by notice as required by section 16D hereafter. Nothing contained herein shall prevent Williams, Inc. or its designee(s) upon termination of this Agreement from soliciting, recruiting and/or contracting with any of RVP's Sales Hierarchy for the benefit of Williams, Inc. or such designee(s).

Cir.1985). Thus, we look to two cases decided by the Georgia Court of Appeals.

In *Club Properties, Inc. v. Atlanta Offices–Perimeter, Inc.*, 180 Ga.App. 352, 348 S.E.2d 919 (1986), the Court of Appeals of Georgia struck down a liquidated damages clause in a lease providing for monetary payment should the lessee hire, or attempt to hire, any of the lessor's skilled employees. The court found the provision to be in partial restraint of trade, detecting "no meaningful difference" between such an agreement and an individual's covenant not to compete for another's business. *Id.* 348 S.E.2d at 921. The court then applied Georgia's traditional rule of reason test to determine the provision's reasonability as to time, territory and proscribed activities.

In the present case, the district court relied on *Lane Co. v. Taylor*, 174 Ga.App. 356, 330 S.E.2d 112 (1985), to uphold the non-recruitment covenant at issue. In *Lane*, the Georgia Court of Appeals upheld a non-recruitment covenant containing no geographical limitation at all, seemingly in violation of the "time, territory and activities" test. Instead, the *Lane* court analyzed the non-recruitment covenant there according to a "legitimate business interest" test.

The district court's sole reliance on *Lane* is misplaced. First, the district court overlooked the more recently decided *Club Properties* case with its express application of the rule of reason test to non-recruitment covenants. Second, *Lane* is not binding precedent in the Georgia Court of Appeals because only two judges concurred therein. See Ga.Ct.App.R. 35(b). Third, even if *Lane* were binding precedent in

Georgia, it appears to conflict with Georgia's rule of reason test requiring restrictive covenants in employment contracts to be reasonable as to time, place and activities proscribed. See *Walker*, 307 S.E.2d at 916; *Stand-by Labor*, 198 S.E.2d at 149.[7]

Finally, we find little difference between an agreement prohibiting the solicitation of Williams' sales force and an agreement prohibiting solicitation of its customers. Because MILICO agents both sell and recruit others to sell insurance, MILICO customers and agents are largely one and the same. Thus, we are persuaded that the covenants not to solicit and recruit overlap, and should be analyzed identically.

However, we need not decide with finality how, if at all, non-recruitment covenants differ from covenants not to solicit. Nor must we decide conclusively how non-recruitment covenants are treated under Georgia law. We need only determine, based on the record before us, whether MILICO and Williams met the requirements for the issuance of a preliminary injunction. For the aforementioned reasons, we cannot conclude, as a matter of law, that the first prerequisite for the issuance of a preliminary injunction—substantial likelihood of success on the merits—has been met. We must, therefore, reverse the district court's issuance of a preliminary injunction as to the covenants not to recruit and remand for further proceedings.

3. *The Covenant Not to Disclose and the Trademark License Agreement*

We have examined closely the Agents' claims regarding the non-disclosure cove-

---

**7.** After the filing of Judge Vining's order in the present case, both he and the Georgia Court of Appeals have revisited the issue of non-recruitment covenants contained in employment contracts. In *ALW Marketing Corp. v. Drunasky*, No. 91–CV–545 (N.D.Ga. Dec. 30, 1991), Judge Vining analyzed a non-recruitment covenant contained in the 1989 version of Williams' RVP contract. Relying this time on *Club Properties*, Judge Vining struck down the non-recruitment covenant at issue as violative of the rule of reason and as overbroad. We note, however, that the non-recruitment covenants at issue before us, written in 1986, are in language and substance somewhat different from the 1989

version examined by Judge Vining in *Drunasky*, and thus we view them distinctly.

We also note that the Georgia Court of Appeals recently cited *Lane* to uphold a non-recruitment covenant containing no territorial limitation in *U3S Corp. of America v. Parker*, 202 Ga.App. 374, 414 S.E.2d 513 (1991) (en banc). However, the court's reassertion of *Lane* fails to mention either the legitimate business interest test adopted by the *Lane* court or the rule of reason test mandated by *Club Properties*. Indeed, *Parker* fails to mention *Club Properties* at all. In short, *Parker* clouds, and not clarifies, this issue.

nant and the trademark license agreement and find those claims to be meritless. We therefore affirm the district court's issuance of a preliminary injunction as to those claims.[8]

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's issuance of its preliminary injunction as to the non-disclosure covenant and trademark license agreement, but reverse as to the non-solicitation and non-recruitment covenants and remand to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED.

---

**8.** We find meritless the Agents' claim that Amerishare should not fall within the purview of the preliminary injunction. An injunction is binding on "those persons in active concert or partic- ipation" with the parties to the action. Fed. R.Civ.P. 65(d). Thus, to the extent the preliminary injunction applies to the Agents, it also applies to Amerishare.