213 Ga. App. 891 (1994)
447 S.E.2d 94
DOUGHERTY, McKINNON & LUBY, P.C. et al.
v.
GREENWALD, DENZIK & DAVIS, P.C. et al.
A94A0831.
Court of Appeals of Georgia.
Decided June 30, 1994.
Reconsideration Denied July 14, 1994.
Hatcher, Stubbs, Land, Hollis & Rothschild, Joseph L. Waldrep, Forrest L. Champion, Jr., for appellants.
Buchanan & Land, Clay D. Land, Benjamin A. Land, for appellees.
SMITH, Judge.
Dougherty, McKinnon & Luby, P.C. (DM&L), formerly Dougherty, McKinnon & Greenwald, P.C. (DM&G), a professional corporation of certified public accountants in Columbus, Georgia, and other persons and entities not relevant here, brought this action against Greenwald, Denzik & Davis, P.C. (GD&D), a competing accounting firm formed by former DM&G employees. DM&L sought to recover certain liquidated damages required under the terms of an employment termination agreement and other damages. The defendants answered denying the enforceability of the agreement and moved for summary judgment on this issue, which was granted. This appeal was filed in the Supreme Court, which transferred it to this court under the authority of Pittman v. Harbin Clinic Professional Assn., 263 Ga. 66 (428 SE2d 328) (1993). The sole issue presented by this appeal is the enforceability of certain terms in the agreement executed by the shareholder/employees of DM&G.
The agreement provides for repurchase of the shareholder/employee's stock in the corporation upon termination of employment. It also provides that "if a shareholder/employee terminates his employment with DM&G by reason other than his death, normal retirement or total and permanent disability, the entitlement of such shareholder/employee to receive the entire repurchase price payable hereunder for his ... capital stock should be limited due to the possibility *892 of such shareholder/employee becoming a competitor of and taking from DM&G the representation of one or more of its clients, and, in fact, such shareholder/employee should pay to DM&G compensation in the form of liquidated damages for his taking from DM&G of one or more of its clients." It provides that if a shareholder/employee leaves DM&G for any reason other than death, retirement, or permanent and total disability and performs services for DM&G clients within three (3) years after leaving DM&G, liquidated damages must be paid. The damages are equal to 125 percent of the amount billed by DM&G to each such client for the fiscal year immediately prior to the year of termination or the year the client is taken, whichever is later.
DM&G shareholder/employees Richard Greenwald and Richard Denzik and non-shareholder/employee Charles Davis left DM&G on April 19, 1991. They formed a competing corporation, GD&D, in Columbus, and began their new accounting practice. A number of DM&G clients left DM&G and are now clients of GD&D, causing a substantial drop in DM&L's revenue.
1. DM&L contends the trial court erred in ruling that the provisions of the agreement in issue constitute a covenant not to compete because the agreement does not prohibit competition; on the contrary, competition is expressly permitted and anticipated. They argue that the payment of liquidated damages is not a penalty for competition, but rather a recognition that the corporation must repurchase the departing accountant's stock and will suffer damages that are difficult to calculate. They analogize the liquidated damages provision to the purchase of a business. We do not agree.
The public policy of Georgia regarding this matter may be discerned from the language in Art. III, Sec. VI, Par. V (c) of the Georgia Constitution of 1983, which provides that "[t]he General Assembly shall not have the power to authorize any contract or agreement which may have the effect of or which is intended to have the effect of defeating or lessening competition. ..."[1] In carrying out this policy, "[i]t is the legal effect of a contractual provision, not the parties' specified manner of enforcement of the provision, that determines enforceability vel non [of a contract]. Notwithstanding the fact that a liquidated damages provision represents the parties' agreement as to *893 compensation for a breach of contract, if the underlying contract itself violates some principle of law, the liquidated damages provision cannot be enforced. See OCGA § 13-6-7. Pursuant to OCGA § 13-8-2 (a) (2), contractual provisions ... in general restraint of trade are, as a matter of law, unenforceable. ... [T]he mere fact that such a provision may happen to be couched in terms of liquidated damages, rather than as the personal covenant of the contracting party, will not suffice to render it enforceable. [Cits.]" Club Prop. v. Atlanta Offices-Perimeter, 180 Ga. App. 352, 353 (1) (348 SE2d 919) (1986).
The agreement calls for payment not of a "purchase price" but of a severe penalty, triggered simply by the fact of competition. The penalty exacted for competition will be set off against, and is likely to eliminate, the net effect of the stock repurchase provision. Its effect, therefore, is at least to give pause to those employee accountants who may consider competing against the corporation. Like the provision under review in Club Prop., it has the ultimate effect of securing the promisors' agreement that they will not compete with DM&G for three years unless a steep price is paid. This has the effect of lessening competition, and it was intended to have such effect; absent the terms of the agreement appellees would be free to compete without "purchasing" the right to do so and without any conditions. "We can perceive no meaningful difference between such an agreement and the covenant of an individual that he will not compete for another's business customers." Id. at 354 (2).
2. Although contracts in general restraint of trade are void as being against public policy, restrictive covenants in employment contracts are considered to be only in partial restraint of trade. They will be upheld if the restraints imposed are reasonable, founded on valuable consideration, reasonably necessary to protect the interest of the party in whose favor they are imposed, and not unduly prejudicial to the public interest. W. R. Grace & Co. v. Mouyal, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). Determination of the reasonableness of the restraint is a question of law for the court. Id. As a "`helpful tool' in examining the reasonableness" of the restraint, a three-element test has evolved. Id. This involves consideration of whether the restraint is "`strictly limited in time and territorial effect and [is] otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee.' [Cit.]" Singer v. Habif, Arogeti & Wynne, P.C., 250 Ga. 376, 377 (297 SE2d 473) (1982). Because we have determined that the provisions at issue here are not functionally different from a covenant not to compete in an employment contract, we apply this test and find that the restraint in this contract is unreasonable and unenforceable.
(a) This restraint prohibits former employee accountants from performing services for any and all former clients of DM&G regardless *894 of whether they performed services for or had a business relationship with these clients while employed at DM&G. Because of the nature of the professional-client relationship, appellees would have gained some degree of trust, confidence, and rapport with clients for whom it performed services at DM&G, and DM&G has a legitimate need to protect itself from the risk that an employee accountant may later use such a relationship to appropriate or "pirate" such clients for their own benefit. Singer, supra, 250 Ga. at 377. However, the restraint here provides DM&G with greater protection than needed. The former employees have no unfair competitive advantage regarding customers with whom they did not work and had no business relationship while employed at DM&G Id. at 377-378. The restriction is therefore overbroad.
(b) The restraint is overbroad in another way as well. It prohibits not only solicitation of former DM&G clients but also acceptance of any work from such clients regardless of who initiated the contact. This is an unreasonable restraint as well, because in addition to over-protecting DM&G's interest, it "unreasonably impacts on [appellees] and on the public's ability to choose the professional services it prefers. [Cit.]" Singer, supra at 377.
(c) Finally, the restriction is not limited geographically or territorially. In Fuller v. Kolb, 238 Ga. 602 (234 SE2d 517) (1977), the Supreme Court held that a similar restriction prohibiting an employee accountant from performing services for any client of the employer for a two-year period was overbroad and unreasonable because of the absence of such a territorial limitation. Id. at 603-604. In doing so, the court disapproved a prior case, Kirshbaum v. Jones, 206 Ga. 192 (56 SE2d 484) (1949), in which a restriction without a territorial limitation was upheld.
Recently, the Supreme Court harmonized Fuller and Kirshbaum in W. R. Grace & Co. v. Mouyal, supra, 262 Ga. at 467, n. 3, noting that a restrictive covenant prohibiting a former employee from rendering services to any client of the employer must contain a territorial restriction expressed in geographical terms. The rationale for this rule is that such a broad restriction "does not take into account whether the employee had a business relationship with that client or whether it was the client who solicited the former employee, [and therefore] is otherwise unreasonable and overbroad in its attempt to protect the employer's legitimate interest in keeping the employee from taking advantage of the goodwill generated during his employment with the employer to lure employer customers away. The Kirshbaum holding is applicable to restrictive covenants limited to employer clients serviced by the former employee during his tenure with the employer." Id.
Because we find that the restraint in the termination agreement *895 is, in effect, a covenant not to compete, and because it was unreasonable in several respects, it is unenforceable. Consequently, the trial court properly granted summary judgment to appellees on this issue.
Judgment affirmed. Pope, C. J., and McMurray, P. J., concur.
NOTES
[1] In this regard, see Jackson & Coker, Inc. v. Hart, 261 Ga. 371 (405 SE2d 253) (1991). In Jackson & Coker, the Supreme Court held that OCGA § 13-8-2.1, enacted in 1990 and relating to restrictive covenants ancillary to employment contracts, was unconstitutional as being in conflict with the Georgia Constitution of 1983, Art. III, Sec. VI, Par. V (c). The court held that OCGA § 13-8-2.1, which provided that contracts that restrain competition "in a reasonable manner" and are not unconscionable are not against public policy and all courts shall enforce them, was "an effort by the General Assembly [to] breathe life into contracts otherwise plainly void as being impermissible" under the Constitution. 261 Ga. at 372.