A99A0333. SMITH ADCOCK & COMPANY v. ROSENBOHM.
(518 SE2d 708)

Judge Harold R. Banke.

Smith Adcock & Company ("Smith") brought suit against its former employee, Karl E. Rosenbohm, to enforce a restrictive covenant in an employment contract and for other relief. The trial court granted summary judgment to Rosenbohm on the ground that the covenant constitutes an unreasonable partial restraint of trade. Smith appeals.

Smith is a Georgia public accounting firm comprised of a partnership of professional corporations with its principal office in Atlanta and an additional office in Athens. Rosenbohm is a certified public accountant who became employed as a staff accountant and employee at will. Approximately five years later, Smith persuaded Rosenbohm to sign a "Mutual Non-Piracy Agreement." A little over a year after that, Rosenbohm terminated his employment with Smith and began working for another accounting firm in Savannah. Smith now seeks to enforce paragraph 4 of the non-piracy agreement.

The stated purposes of the agreement are to protect confidential client information which the company has entrusted to the signing employee and to provide for the employee's, other company employees', and the company's mutual non-interference and non-piracy of the others' "book of business." The company's four partners required all staff accountants, totaling approximately eighteen in number, to enter into identical agreements as a condition of continuing their employment.

The term "book of business" is defined in paragraph 1 (B), which directs the company to assign each client account to the employee responsible for obtaining the account and permanently place such account on that employee's book of business. "[A]ny client currently/subsequently" receiving public accounting type services from the

company other than those clients designated as being in the book of business of the employee who signs the agreement is defined under paragraph 1 (D) as a "company client."

Under paragraph 3 of the agreement, the employee is prohibited from soliciting a company client to be the client of the employee for a period of two years after leaving the company's employ, and the partners agree to abide by the same restriction with respect to clients within the employee's book of business.

Under paragraph 4, an employee who terminates his association with the company and "continues to render public accounting type services to any company client or former company client or client of another company employee or partner" is required to pay Smith a royalty of 20 percent of the gross fees collected from such client each year for a period of five years commencing with the date of the former employee's termination. The partners of the company determined that they were entitled to this compensation due to the great importance of employment-related client access in enabling a terminating employee to continue rendering accounting services to clients not within that employee's book of business.

Paragraph 5 of the agreement makes provision for the company to purchase all or a portion of a departing employee's book of business on the same terms set forth in paragraph 4, if both the employee and company so desire.

Smith's evidence showed that its staff accountants have contact with, or are provided with access to confidential information concerning, "virtually every" client of the company. The payment of a 20 percent five-year royalty was chosen because this is one payment method generally used for accounting practice acquisitions in Georgia. Smith asserts that after leaving its employ, Rosenbohm continued to render accounting services to eight company clients who have become former company clients as a result. Smith claims that these clients should have been recorded in his book of business. *Held*:

Unlike a restrictive covenant ancillary to sale of a business or to a partnership agreement, a restrictive covenant entered into between a partnership and one of its employees incident to an employment contract receives strict scrutiny. *Habif, Arogeti & Wynne v. Baggett*, 231 Ga. App. 289 (1) (498 SE2d 346) (1998). Covenants ancillary to employment agreements are generally divided into two categories: covenants not to solicit and covenants not to compete. See *Baggett*, supra at 295.

To resolve the enforceability of paragraph 4, we must first determine how it is to be classified. *Club Properties v. Atlanta Offices-Perimeter*, 180 Ga. App. 352, 353 (1) (348 SE2d 919) (1986). Like the accounting firm in *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.*, 213 Ga. App. 891, 892 (1) (447 SE2d 94) (1994),

Smith argues that the provision of the agreement in issue does not constitute a covenant not to compete because it does not prohibit competition. This argument must be rejected for reasons given in *Dougherty*. "[A]bsent the terms of the agreement [Rosenbohm] would be free to compete without [paying for] the right to do so and without conditions." *Dougherty*, supra at 893. Consequently, the agreement "has the effect of lessening competition." Id.; see also *William N. Robbins, P.C. v. Burns*, 227 Ga. App. 262 (1) (488 SE2d 760) (1997). As such, it is in legal effect a covenant not to compete, which

> is considered to be in partial restraint of trade and will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public. Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all other circumstances. A three-element test of duration, territorial coverage, and scope of activity has evolved as a "helpful tool" in examining the reasonableness of the particular factual setting to which it is applied.

(Citations and punctuation omitted.) *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992).

*Singer v. Habif, Arogeti & Wynne*, 250 Ga. 376 (297 SE2d 473) (1982), held unenforceable a restrictive covenant prohibiting an accountant from accepting employment from any clients of his former employer in the metropolitan Atlanta area or in any county in which such clients were located. The *Singer* plurality held that

> [w]ithout the benefit of the trust and confidence built up through the professional-client relationship, [the accountant] does not have the ability to unduly influence clients for his own benefit; and therefore, he does not hold an unfair competitive edge over [his employer] in relation to those clients from which [the employer] would need protection.

(Footnote omitted.) Id. at 377-378.

The majority in *Mouyal* agreed that the covenant in *Singer* was unenforceable, but modified *Singer* in one respect. In this regard, *Singer* applied a "traditional test" requiring restrictive covenants in employment agreements to be strictly limited in time *and* territorial effect. 250 Ga. at 377. *Mouyal* concluded that in the modern business world the presence of an express geographic territorial description is

not required in all cases involving covenants not to solicit. 262 Ga. at 467.

   *Mouyal* held that there is no need for a territorial restriction in a restrictive covenant where the former employee is only prohibited from soliciting clients whom the employee contacted during his tenure with the employer. After citing *Singer, Mouyal* conversely concluded that

> a restrictive covenant prohibiting a former employee from rendering services to *any* client of the employer must contain a territorial restriction expressed in geographic terms because that restriction, which does not take into account whether the employee had a business relationship with that client or whether it was the client who solicited the former employee, is otherwise unreasonable and overbroad in its attempt to protect the employer's legitimate interest in keeping the employee from taking advantage of the goodwill generated during his employment with the employer to lure employer customers away.

(Emphasis in original.) 262 Ga. at 467, n. 3; see *Fuller v. Kolb*, 238 Ga. 602 (234 SE2d 517) (1977). *Chaichimansour v. Pets Are People Too, No. 2*, 226 Ga. App. 69, 70 (1) (485 SE2d 248) (1997), later held a covenant such as the one described above to be enforceable where the territorial limitation was tied to where the employee actually worked for her employer.

   Paragraph 4 of the present agreement is a non-competition covenant without territorial limitation. Although it does not apply to clients within a signing employee's book of business, the trial court interpreted it as applying to clients with whom such employee had no contact during his employment. Under this interpretation, the covenant would appear unenforceable under cases previously cited. Smith does not challenge this interpretation, but rather seeks to uphold the covenant as reasonable on grounds that accountants employed by Smith have contact with, or are provided with access to confidential information concerning, virtually every client of the firm. But this means that there are some clients with whom the employee has had no contact and concerning whom the employee possesses no confidential information. Moreover, through its reference to "former company clients," paragraph 4 would also apply to clients who had severed their relationships with the firm years before the employee's termination.

   In addition, the restrictions in the agreement are not "mutual." Paragraph 4 contains a flat prohibition against a departing employee's rendering competitive services to company clients without

making the required payments. Paragraph 5 does not impose a corresponding obligation on Smith. It merely gives Smith an option to purchase all or part of such employee's book of business.

For the above reasons, the court did not err in holding that this covenant constitutes an unreasonable partial restraint of trade. Remaining issues are moot.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 26, 1999.

*James B. Ritchie*, for appellant.
*Duffy, Feemster & Lewis, Dwight T. Feemster, Matthew M. Bush*, for appellee.