39176, 39177. BECKMAN v. COX BROADCASTING CORPORATION; and vice versa.

GREGORY, Justice.

From 1962 until June 30, 1982, appellant Beckman was employed by Cox Broadcasting Corporation (Cox) as a meteorologist and "television personality," appearing primarily on Cox's affiliate, WSB-TV. In April, 1981, Beckman entered into a five-year contractual agreement with WXIA-TV, a competitor of Cox, to commence working for WXIA as a meteorologist and "television personality" when his contract with Cox expired on July 1, 1982. Cox was made aware of Beckman's plans and in July, 1981, Cox filed a petition for declaratory judgment, Code Ann. § 110-1101, seeking a determination that the restriction against competition in its employment agreement with Beckman was valid. This restriction provides: "Employee shall not, for a period of one hundred-eighty (180) days after the end of the Term of Employment, allow his/her voice or image to be broadcast 'on air' by any commercial television station whose broadcast transmission tower is located within a radius of thirty-five (35) miles from Company's offices at 1601 West Peachtree Street, N.E., Atlanta, Georgia, unless such broadcast is part of a nationally broadcast program." Following a hearing the trial

court dismissed the action finding there was no evidence to conclude either that WXIA-TV would require Beckman to violate the restrictive covenant or that Beckman would violate the covenant. Therefore, the trial court determined, Cox had not presented a justiciable controversy.

On June 16, 1982, Beckman formally demanded to be released from the restrictive covenant in his contract. When Cox refused Beckman filed this declaratory judgment action to ascertain the validity of the restrictive covenant under Georgia law.

The trial court found that the employment contract with WXIA-TV does not require Beckman to appear "on-air" during the first six months of his employment; that Beckman, under the terms of this agreement, is rendering "substantial duties and services to WXIA-TV"[1] for which he is being compensated; that during the term of Beckman's employment with Cox, WSB-TV spent in excess of a million dollars promoting "Beckman's name, voice and image as an individual television personality and as part of WSB-TV's Action News Team";[2] that Beckman is one of the most recognized "television personalities" in the Atlanta area;[3] that television viewers select a local newscast, to a certain degree, based on their "appreciation of the personalities appearing on the newscast"; and that local television personalities "are strongly identified in the minds of television viewers with the stations upon which they appear." The trial court also found that in March, 1982, WSB-TV instituted a "transition plan" to reduce the impact Beckman's departure would have on the station's image. As part of this transition plan Beckman was removed from one of the two nightly WSB-TV news programs. Additionally, WSB-TV undertook an extensive promotional campaign, featuring both Beckman and his replacement as members of the "Action News Team." This transition plan contemplated the gradual phasing out of Beckman from the "Action News Team." The station projected that Beckman would then be "off the air" in the Atlanta market for six months, permitting WSB-TV to diminish its association with Beckman in the public's

---

[1] The record shows that Beckman is currently "gathering and preparing weather news and information, preparing weather forecasts, and preparing the information for presentation on the air." He is not, however, appearing "on air" to present the weather forecast.

[2] The evidence shows that from 1978 until the expiration of Beckman's contract on June 30, 1982, WSB-TV spent over $750,000 promoting Beckman and the "Action News Team."

[3] One study indicates more than 97% of television viewers sampled in Atlanta recognize Johnny Beckman.

mind and providing the viewing public an opportunity to adjust to Beckman's replacement.

The trial court concluded that to permit Beckman to appear "on air" in the Atlanta area during the first six months of his contract with WXIA-TV would "disrupt the plans and ability of WSB-TV to adjust successfully to the loss of a well-known personality that it has heavily promoted before it must begin competing with that personality in the same marketplace." The trial court also determined that WSB-TV would be injured by allowing a competitor to take advantage of the popularity of a television personality which WSB-TV had expended great sums to promote before WSB-TV had time to compensate for the loss of that personality. The trial court further found that WSB-TV has a legitimate and protectable interest in the image which it projects to the viewing public.

While the trial court concluded the damage to WSB-TV would be great if Beckman were permitted to compete against it within the proscribed six months, the court reasoned that Beckman would suffer little harm if the covenant was enforced against him. The trial court found that Beckman is currently employed, without loss of remuneration, and that, based on the testimony of expert witnesses at trial, "Beckman will not suffer substantial damage or loss of recognition and popularity solely as a result of being off the air during the first 180 days of his five year contract with WXIA-TV."

The trial court ruled that the restrictive covenant is valid under Georgia law as it is reasonable and definite with regard to time and territory and is otherwise reasonable considering the interest of Cox to be protected and the impact on Beckman.

Beckman appeals this decision in case no. 39176. In case no. 39177 Cox appeals the trial court's ruling that Beckman is not estopped from challenging the reasonableness of the restrictive covenant based on his sworn statements at the hearing in the July, 1981, declaratory judgment action that he did not intend to violate the restrictive covenant.

1. Case no. 39176. Beckman concedes the covenant not to compete is reasonable with regard to the time and territorial restrictions, but urges that it is otherwise unreasonable in that it is broader than is necessary for Cox's protection.

A covenant not to compete, being in partial restraint of trade, is not favored in the law, and will be upheld only when strictly limited in time, territorial effect, the capacity in which the employee is prohibited from competing and when it is otherwise reasonable. *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181 (236 SE2d 265) (1977); *Rollins Protective Services Co. v. Palermo,* 249 Ga. 138 (287 SE2d 546) (1982). See, Code Ann. § 20-504; Const. 1976, Art. III, Sec.

VIII, Par. VIII (Code Ann. § 2-1409). In determining whether a covenant is reasonably limited with regard to these factors, the court must balance the interest the employer seeks to protect against the impact the covenant will have on the employee, factoring in the effect of the covenant on the public's interest in promoting competition and the freedom of individuals to contract. *Uni-Worth Enterprises v. Wilson,* 244 Ga. 636 (261 SE2d 572) (1979); *Howard Schultz & Assoc.,* supra; *Durham v. Stand-by Labor of Ga.,* 230 Ga. 558 (198 SE2d 145) (1973).

In determining the legitimacy of the interest the employer seeks to protect, the court will take into account the employer's time and monetary investment in the employee's skills and development of his craft. See, e.g., *Orkin Exterminating v. Mills,* 218 Ga. 340 (127 SE2d 796) (1962); *Barry v. Stanco Communications Products,* 243 Ga. 68 (252 SE2d 491) (1979). The court will also consider the harm the employer would suffer were the employee permitted to compete against him within the time, territory and capacity restricted by the covenant. In this case it is not disputed that WSB-TV has invested substantial sums in promoting Beckman's image as part of its "Action News Team," and thus, as a part of the image of the station itself. The evidence supports the trial court's finding that WSB-TV has a significant interest in the image of its television station which it has created, in large measure, by promoting those individuals who appear on behalf of the station, whether as newscasters, sports announcers, meteorologists, or "television personalities." This interest is entitled to protection. We further agree with the trial court that WSB-TV would be greatly harmed by Beckman's appearance on a competing station prior to the completion of WSB-TV's transition plan.

Beckman argues, however, that the detrimental impact of the restrictive covenant on him outweighs the need to protect the interests of WSB-TV. Beckman maintains that he has already realized a drop in his popularity among the members of his viewing audience[4] and that a prolonged absence from the airways will have a "disastrous effect on his career." While the evidence is not without conflict, the trial court's finding that a six month absence from the air will not substantially damage Beckman's popularity or recognition among the public is well-supported by the record.

Beckman also urges that the "television personality of Johnny Beckman" belongs solely to him and that he is entitled to take this

---

[4] As evidence of this, Beckman points out that fewer persons recognize him in public and seek his autograph than when he was "on the air."

image, which he maintains he has developed by his own skills and resources, to any competing station without interference from WSB-TV. It is true that an employee's aptitude, skill, dexterity, manual and mental ability and other subjective knowledge obtained in the course of employment are not property of the employer which the employer can, in absence of a contractual right, prohibit the employee from taking with him at the termination of employment. *Thomas v. Best Mfg. Co.,* 234 Ga. 787 (218 SE2d 68) (1975). We agree that Beckman is entitled to take the "image and personality of Johnny Beckman" to WXIA-TV. However, the record supports the trial court's determination that throughout Beckman's career the resources of WSB-TV have been used to bolster and promote the image of Beckman *as a part of the image of WSB-TV.* As such we conclude that for a limited time and in a narrowly restricted area, WSB-TV is entitled to prevent Beckman from using the popularity and recognition he gained as a result of WSB-TV's investment in the creation of his image so that WSB-TV may protect its interest in its own image by implementing its transition plan. We find that the restrictive covenant in this case is reasonably tailored to that end. Beckman is only prohibited from competing "on air" in the Atlanta market for a period of six months, the time calculated by WSB-TV to fully implement its "transition plan" to recover from the loss of Beckman's services. He is not prohibited from working "in any capacity" within the trade for a competitor as he is, admittedly, currently working as a meteorologist for WXIA-TV, and, to this extent, is in competition with WSB-TV. *Murray v. Lowndes County Broadcasting Co.,* 248 Ga. 587 (284 SE2d 10) (1981). We agree with the trial court that the restrictive covenant in this case is valid.

2. Because of our decision in case no. 39176, we do not reach the merits of the cross-appeal in case no. 39177.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 27, 1982.

*Powell, Goldstein, Frazer & Murphy, James C. Rawls, Frank Love, Jr., V. Robert Denham, Jr.,* for appellant.

*King & Spalding, Joseph R. Bankoff, R. Marcus Lodge,* for appellee.