40792. PIERCE v. INDUSTRIAL BOILER COMPANY, INC.

HUNT, Judge.

This is a suit to enjoin a former employee of the plaintiff from violating a restrictive covenant contained in his employment contract.

This suit was brought by plaintiff-appellee, Industrial Boiler Company, Inc., against defendant-appellant, William Ray Pierce, Jr., while Pierce was employed as a salesman with Industrial Boiler in Thomasville, Georgia. He signed an employment contract which included the following restrictive covenant:

"If this employment is terminated for any cause, employee shall not, for a period of one year after the effective date of such termination, engage directly or indirectly, either personally or as an employee, associate partner, manager, agent, officer or otherwise, or by means of any corporate or other devise [sic], in the boiler manufacturing and sales business, in any capacity held by employee during the term of this employment agreement, within a 120-mile radius of downtown Thomasville, Thomas County, Georgia. For such period of time and within such geographical area employee shall not solicit orders, directly or indirectly, from any customers of employer, or from any customers of its successor, for such products as are sold by employer or its successor, either for himself or as an employee of any other person, firm, or corporation."

After several years, Pierce quit his job to work as a salesman for Hurst Boiler & Welding Company (located 15 miles from Thomasville). Industrial Boiler brought this action to enforce the previously quoted covenant. After a hearing, the trial court granted a

permanent injunction, restraining Pierce for a period of one year "from his employment with Hurst in the capacity of a salesman . . . and from accepting employment with any other competitor of Industrial Boiler Co., Inc., as a salesman within 120 miles of Thomasville, Georgia . . ."

Pierce appeals, contending: (1) The 120-mile limitation of the covenant bears no reasonable relationship to the sales territory of Industrial Boiler, in that Industrial Boiler sells nationwide and has no regular customers within a 120-mile radius of Thomasville. (2) The covenant is overbroad, as it prohibits an employee from working in the boiler manufacturing and sales business "in any capacity" with Industrial Boiler.

For the following reasons, we disagree with these contentions and, therefore, affirm.

1. The 120-mile limitation is reasonable because it pertains to the territory where Pierce formerly was employed and serves to protect the employer's legitimate interest in the investment of time and money in developing the employee's skills. See *Barry v. Stanco Communications Products,* 243 Ga. 68 (252 SE2d 491) (1979) and *Beckman v. Cox Broadcasting Corp.,* 250 Ga. 127 (296 SE2d 566) (1982). Compare *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181 (236 SE2d 265) (1977) and cits.

2. The covenant is limited to "the boiler manufacturing and sales business in any capacity held by employee." As Pierce formerly was employed as a salesman of boilers, this activity alone is prohibited by the covenant. Cf., *Dixie Bearings v. Walker,* 219 Ga. 353 (133 SE2d 338) (1963).

*Judgment affirmed. All the Justices concur, except Smith and Bell, JJ., who dissent. Weltner, J., disqualified.*

DECIDED MAY 16, 1984 — REHEARING DENIED JUNE 13, 1984.

*Whitehurst, Cohen & Blackburn, R. Bruce Warren,* for appellant.
*William U. Norwood III,* for appellee.

BELL, Justice, dissenting.

I write this dissent in order to point out what I consider to be serious inconsistencies between the holdings of today's majority opinion and prior case law.

1). The employment contract executed by appellant prohibits him from performing enumerated activities anywhere "within a 120-mile radius of downtown Thomasville, Thomas County, Georgia." Appellant challenges this geographical restriction as

unreasonable on the basis that, although appellant was employed as a salesman with a national sales territory, appellee has no regular customers within a 120-mile radius of Thomasville. The majority finds it *is* reasonable, on the ground that "it pertains to the territory where Pierce formerly was employed and serves to protect the employer's legitimate interest in the investment of time and money in developing the employee's skills." (Emphasis supplied.)

It seems to me that the majority's reasoning relies upon an assumption that an employer's investment of time and money in developing its employee's skills can, standing alone, justify restrictions in employment contracts. In my view, this assumption overlooks the purpose and underlying justification for territorial limitations, and in the process directly contradicts previous decisions by this court, the leading case among which is *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181 (1) (236 SE2d 265) (1977).

In *Howard Schultz* we made the following observation concerning territorial limitations: "Insofar as territorial restrictions are concerned, some of them relate to the territory in which the employee was employed; others relate to the territory in which the employer does business. The former generally will be enforced. [Cits.] The latter generally are unenforceable absent a showing by the employer of the legitimate business interests sought to be protected. [Cits.] It appears that the justification for this difference in treatment is that a court will accept as prima facie valid a covenant related to the territory where the employee was employed *as a legitimate protection of the employer's investment in customer relations and good will.* Thus a court will enforce an agreement prohibiting an employee from pirating his former employer's customers served by the employee, during the employment, at the employer's direct or indirect expense. *Conversely, a court will not accept as prima facie valid a covenant related to the territory where the employer does business where the only justification is that the employer wants to avoid competition by the employee in that area.*

"In the case before us the employee was prohibited from engaging in competition within 'any area or areas from time to time constituting the principal's or associate's area of activity in the conduct of their respective businesses, as of the date of said termination.' . . . The employer has not justified this territorial restriction. *It therefore stands as a bald attempt by the employer to prevent competition by the employee and is unenforceable." Howard Schultz Assoc.,* supra, 239 Ga. at 183-184. (Emphasis supplied.)

It should be apparent that, even if territorial limitations extend no further than an area in which an employee was technically employed, they nevertheless are not automatically and irrebuttably

reasonable. The plain meaning of *Howard Schultz Assoc.* is that courts will generally honor geographical limitations covering the area where the employee was employed because those limitations will usually tend to protect the employer's investment in its customer relations and good will with customers *served by the employee.* See *Orkin Exterminating Co. v. Walker,* 251 Ga. 536 (2) (b) (307 SE2d 914) (1983).[1] Here, the territorial restriction relates neither to the territory in which the appellant was employed, nor in which the appellee does its business: it appears undisputed that appellee has no regular customers within a 120-mile radius of Thomasville, much less customers with which appellant had contact while employed by appellee, and which he might therefore have an unfair opportunity to pirate from appellee. *Orkin Exterminating,* supra, 251 Ga. at 538-539. Therefore, this territorial restriction should not be enforced absent a showing by appellee of a legitimate business interest which it sought to protect. *Howard Schultz Assoc.,* supra, 239 Ga. at 183. Far from manifesting such a legitimate interest, the record shows that appellee's *sole* motivation, which is expressly recognized by the majority of this court, was to dissuade appellant from considering working for a competitor.[2] To me, the inescapable conclusion which should be drawn from our prior case law, as applied to the facts of this case, is that this restrictive covenant is nothing more than "a bald attempt by the employer to prevent competition by the employee and is unenforceable." *Howard Schultz Assoc.,* supra, 239 Ga. at 184.[3]

---

[1] In *Orkin Exterminating* we considered a covenant which prohibited employees "from working for *any* Orkin customers in the Augusta area, including customers with whom they had no contact while employees of Orkin." *Orkin,* supra, 251 Ga. at 539. We held that this covenant was overbroad "[b]ecause the [employees] hold no unfair competitive advantage respecting the customers for whom they did not work . . . ." Id.

[2] Testimony on behalf of appellee at the hearing disclosed appellee's purpose for the territorial restriction:

"What we are trying to do is prevent ourselves as an industrial team from becoming an incubator to uproot other companies in here, in this area. When you have people, especially from a supervisory capacity and up that you have to expend, expend a lot of time and effort into their growth. A normal employee takes three to six months or approximately $46,000 to train, but when you get into a management type personnel you've got to get into pricing, you've got to get into design, you've got to get into engineering, you've got to get into travel and it costs a lot of money. And if anybody can just arbitrarily come in and take them, then — *without any sacrifice to that person coming in, then we feel that the hundred and twenty miles would be reasonable. If a person has to get up and move then they'll be dedicated to that situation.*" (Emphasis supplied.)

[3] *Barry v. Stanco Communications Products, Inc.,* 243 Ga. 68 (252 SE2d 491) (1979), and *Beckman v. Cox Broadcasting Corp.,* 250 Ga. 127 (296 SE2d 566) (1982),

2). Appellant also argues that the covenant is overbroad because it prohibits him from working in the boiler manufacturing and sales business "in any capacity held by employee during the term of this employment agreement. . . ." After a hearing, the trial judge granted an injunction, but, in apparent recognition of the vagueness of the covenant as written,[4] limited the restraint, so that appellant was only prohibited "from accepting employment with any other competitor of [appellee] *as a salesman. . . .*" (Emphasis supplied.) Today's majority opinion approves the trial court's order, holding that, "[a]s Pierce formerly was employed as a salesman of boilers, this activity alone is prohibited by the covenant."

In my view, the effect of this holding is to approve sub silentio the "blue-penciling" of overbroad and vague covenants, and is therefore directly contradictory to previous decisions by this court in which we expressly declined to adopt the blue-pencil theory of severability. *Rita Personnel Services v. Kot,* 229 Ga. 314 (191 SE2d 79) (1972); *Howard Schultz Assoc.,* supra, 239 Ga. at 185-186; *White v. Fletcher/Mayo/Associates, Inc.,* 251 Ga. 203 (303 SE2d 746) (1983). In *Rita,* we held that severance should not be applied to employee restraints because it would encourage employers to routinely " 'fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular case are not unreasonable. This smacks of having one's employee's cake, and eating it too.' " Id. at 317, quoting, Blake, 73 Harv. L. Rev. 625, 682-683. Today's decision opens the door to the widescale abuse of restrictive covenants which was anticipated and thwarted by this court in *Rita,* and it is difficult for me to perceive why our carefully

cited by the majority, are not to the contrary. In *Barry* a statewide restriction was upheld because the employees "were employed to and did solicit business throughout the entire State of Georgia," id. at 70-71, and the restriction was therefore reasonable in view of the facts and circumstances surrounding the case.

In *Beckman* we held that a television station was entitled to protect its investment in Beckman's "image," which it had bolstered and promoted as an integral part of its own image. *Beckman,* supra, 250 Ga. at 130-131. The "image" we spoke of in *Beckman* is clearly nothing more than a species of customer relations and good will, and thus is the legitimate, protectible interest approved in *Howard Schultz.*

[4] The covenant is admittedly somewhat more definite than restrictions of the same type which we have encountered in other cases. For example, in *McNeal Group, Inc. v. Restivo,* 252 Ga. 112 (311 SE2d 831) (1984), we considered an employment contract which forbade an employee from engaging "in any business competitive with Employer *in any capacity whatsoever. . . .*" (Emphasis supplied.) However, even though the covenant in the present case represents an improvement over the version in *McNeal Group,* it still lacks sufficient particularity, since it leaves open the possibility that the employee may work at more than one job during his tenure, and thereafter not know which of those capacities are foreclosed to him.

crafted doctrine, first enunciated in *Rita* and so recently reaffirmed in *White,* should now be apparently overruled by this court.

I am authorized to state that Justice Smith joins in this dissent.