A95A1125. VORTEX PROTECTIVE SERVICE, INC.
v. DEMPSEY.
(463 SE2d 67)

McMURRAY, Presiding Judge.

Plaintiff Vortex Protective Service, Inc. ("Vortex"), brought this action for "Equitable Enforcement of Covenant Not to Compete With Subsequent Damages O.C.G.A. § 51-12-5.1," seeking to enforce a written agreement captioned "EMPLOYEE'S COVENANT NOT TO COMPETE" against a former employee, defendant Todd A. Dempsey. The writing recites "In consideration of the fact that VORTEX PROTECTIVE SERVICE, INC. (the "EMPLOYER" or "VORTEX") has employed . . . Todd Dempsey . . . [he] agree[d] as follows: . . . 1. *Noncompetition by Employee.* During the term of my employment, I will not directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or and [sic] other individual representative capacity engage or participate in any business of the Employer. . . . 2. *Noncompetition after termination.* I agree that upon termination of my employment, whether by my act or by discharge (whether wrongful or otherwise), I will not directly or indirectly, in Spalding County, Georgia, or any county contiguous thereto, enter into or engage generally in direct competition with the Employer in the business of selling,

leasing, installing or servicing burglar alarm, fire detection or other security systems of a type which would be in direct competition with those marketed and serviced by the Employer at the time of my termination, either as an individual on my own or as a partner or joint venturer, or as an employee or agent for any person, or as an officer, director or shareholder of a corporation, for a period of two (2) years after the date my employment terminates. This covenant on my part shall be construed as an agreement independent of any other agreements I may have with Vortex concerning my employment. . . . [The Employer may] apply to a court . . . to enforce specific performance of this covenant or may apply for injunctive relief or both." Todd A. Dempsey signed this writing on February 1, 1994, before a notary public, although the writing does not purport to be under seal. It is substantively identical to an earlier agreement signed by Todd A. Dempsey in 1991. In his verified answer, defendant denied any breach of the non-competition covenant, and further contended the same is void and unenforceable as against public policy. He also counterclaimed for tortious interference with contract and violations of the federal Fair Labor Standards Act, 29 USC § 201 et seq.

After limited discovery, Vortex moved for summary judgment, supporting its motion with the following undisputed facts: Vortex has its principal place of business in Griffin, Georgia. According to the affidavit of Dan Dunson, President of Vortex, "Vortex's primary base is Spalding County and the counties contiguous thereto as set forth in the covenant not to compete's geographic area." Todd A. Dempsey left the employ of Vortex in May 1994 and went to work as an "installer/work leader" for another home security firm, Ultimate Security of America, Inc. ("Ultimate Security"), in Fayetteville, Georgia. Ultimate Security's present customer base is mostly in "Fayette and Clayton counties although [it also has] quite a few in Gwinnett." Thus, Ultimate Security and Vortex are competitors in the business of selling, leasing, installing, monitoring and servicing burglar alarm, fire detection, and other security systems "in adjacent counties." Todd A. Dempsey filed his own motion for summary judgment, arguing that "the post employment restraints imposed on him by his former employer Vortex are void as against public policy and therefore are unenforceable as a matter of law."

The trial court granted defendant's motion for summary judgment, concluding that, because the agreement "impermissibly prevented [defendant's] acceptance of unsolicited business, the entire covenant is void." This direct appeal followed. *Held*:

1. Vortex's first enumeration of error contends the trial court erred "in determining that there was no distinction [between] a Covenant Not to Compete and a Covenant Not to Solicit." In support of this proposition, Vortex argues that "OCGA § 13-8-2.1 clearly estab-

lishes a difference between the two." However, in *Jackson & Coker, Inc. v. Hart*, 261 Ga. 371, 372 (1) (405 SE2d 253), the Georgia Supreme Court held that this Code section is contrary to Article III, Section VI, Paragraph V (c) of the 1983 Georgia Constitution, "inasmuch as it is one that authorizes contracts and agreements which may have the effect of or which are intended to have the effect of defeating or lessening competition or encouraging monopoly." Accordingly, the trial court in the case sub judice was correct to determine "whether the restrictive covenants in question are enforceable under the law as it existed prior to the enactment of OCGA § 13-8-2.1." *Jackson & Coker, Inc. v. Hart*, 261 Ga. 371, 373 (2), supra. Under the law as it existed prior to the enactment of OCGA § 13-8-2.1, covenants restricting customer solicitation "generally have been governed by the same rules as [covenants not to compete]. [Cits.]" *Kloville, Inc. v. Kinsler*, 239 Ga. 569, 570 (238 SE2d 344). Accord *Ward v. Process Control Corp.*, 247 Ga. 583 (2), 584 (277 SE2d 671). The situation is different with respect to specific restrictions "concerning disclosure of confidential business information and employee piracy. *Wiley v. Royal Cup*, 258 Ga. 357, 359-360 (2) (370 SE2d 744) (1988); *Lane Co. v. Taylor*, 174 Ga. App. 356 (2) (330 SE2d 112) (1985)." *Sunstates Refrigerated Svcs. v. Griffin*, 215 Ga. App. 61, 62 (2) (449 SE2d 858). This enumeration is without merit.

2. In two related enumerations, Vortex contends the trial court erred in holding that its covenant not to compete, ancillary to a contract of employment, was overbroad, unreasonable, and unenforceable in its order granting summary judgment on behalf of Todd A. Dempsey. We do not agree.

"Even though contracts generally restraining trade or tending to lessen competition are against public policy and void under Ga. Const. 1983, Art. III, Sec. VI, Par. V (c), and OCGA § 13-8-2, restrictive covenants in employment contracts are deemed only in partial restraint of trade and will be upheld if they are reasonable, founded on valuable consideration, and reasonably necessary to the protected interest, [and] do not unduly prejudice the public interest." *American Gen. Life &c. Ins. Co. v. Fisher*, 208 Ga. App. 282, 283 (1) (430 SE2d 166). But "contracts in unreasonable restraint of trade are contrary to public policy and void, because they tend to injure the parties making them, diminish their means of procuring livelihoods and a competency for their families; tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions, and expose them to imposition and oppression; tend to deprive the public of services of [citizens] in the employments and capacities in which they may be most useful to the community as well as themselves; discourage industry and enterprise, and diminish the products of ingenuity and skill; prevent competition and enhance

prices, and expose the public to all the evils of monopoly. [Cit.]" *Rakestraw v. Lanier*, 104 Ga. 188, 194 (30 SE 735). "In determining reasonableness, consideration must be given to the employee's right to earn a living ([cit.]), and the employee's ability to determine with certainty the area within which his post-employment activities are restricted. [Cits.] At the same time, the employer has a protectible interest in the customer relationships its former employee established and/or nurtured while employed by the employer ([cit.]), and is entitled to protect itself from the risk that a former employee might appropriate customers by taking unfair advantage of the contacts developed while working for the employer. [Cits.]" *W. R. Grace &c. v. Mouyal*, 262 Ga. 464, 465 (2), 466 (422 SE2d 529).

(a) In the post-employment restriction at issue, Todd A. Dempsey promised that he would not, directly or indirectly, enter into or engage generally in direct competition in the business of selling, leasing, installing or servicing burglar alarm, fire detection or other security systems, as an individual, employee, shareholder, officer, or partner. There is no language limiting the application of this restriction to those customers or prospective customers Todd A. Dempsey contacted during his employment with Vortex. In its brief, Vortex concedes that, under this language, Todd A. Dempsey "is not only prohibited from performing [security systems installation and services] for former customers of Vortex [with whom Todd A. Dempsey] had personal contact, but he is [also] prohibited from performing the prohibited activities for *anyone* in the protected areas." (Emphasis supplied.) "However, 'a prohibition against doing business with *any* of an employer's customers, whether or not a relationship existed between the customer and the former employee, is overbroad.' (Emphasis in original.) *W. R. Grace &c. v. Mouyal*, [262 Ga.,] supra at 467 (2), fn. 2. It was, therefore, unreasonable for [the employer, Vortex] to restrict [Todd A. Dempsey's] proscribed post-employment competitive activity to 'any' [prospective customer . . .], without regard to whether [the former employee] had ever had contact with those [prospects] during his employment. It follows that the trial court [in the case sub judice] correctly found the non-competition restrictive covenant to be unreasonable and, thus, unenforceable." *American Software USA v. Moore*, 264 Ga. 480 (1), 483 (448 SE2d 206). Since the post-employment non-competition covenant in this case fails to limit itself expressly to the Vortex customers in the territories serviced by Todd A. Dempsey (and the affidavit of Dan Dunson does not show that Todd A. Dempsey had substantial contacts in Spalding County, Georgia, and all its contiguous counties under a franchise agreement) the reliance Vortex places on *Nunn v. Orkin Exterminating Co.*, 256 Ga. 558 (1), 559 (1) (a) (350 SE2d 425), is ill-founded. There is a vital difference between the territory in which the em-

ployer does business and the territory in which the employee does business. *Wiley v. Royal Cup,* 258 Ga. 357, 358 (1) (370 SE2d 744). "The [Vortex] contract is no more reasonable than if it had [expressly] included the entire State except Rabun's Gap. In [either] event, it covers territory in which the employer has never [shown it] engaged in [substantial] business; and the territorial scope of such a contract is not made more reasonable by the fact that the employer entertains the hope that some day its [security service] business may extend to every city [and subdivision] within the State[, much less the area defined by every county contiguous to Spalding County, Georgia]." *Orkin Exterminating Co. &c. v. Dewberry,* 204 Ga. 794, 802 (1), 808 (51 SE2d 669), overruled in part on other grounds, *Barry v. Stanco Communications Prods.,* 243 Ga. 68, 70 (3), 71 (252 SE2d 491).

(b) The restraint in the case sub judice is overbroad in another way as well. It prohibits not only solicitation of prospective customers, regardless of whether they are former Vortex customers but would also prohibit acceptance of requests for security system business from former Vortex customers, regardless of who initiated the contact and request. Thus, this restriction unreasonably impacts on the ability of the former employee to sustain himself and also limits the public's ability to choose the provider of such security services. See *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.,* 213 Ga. App. 891, 893 (2), 894 (2) (b) (447 SE2d 94).

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED OCTOBER 20, 1995.

*Shepherd & Johnston, Timothy N. Shepherd, William G. Johnston III,* for appellant.

*James L. Seigle,* for appellee.