A97A2476. HABIF, AROGETI & WYNNE, P.C. v. BAGGETT et al.
(498 SE2d 346)

BEASLEY, Judge.

Kenneth Baggett, a shareholder and officer in the public accounting firm of Habif, Arogeti & Wynne, P.C. ("HAW"), left HAW to work as an officer, director, and shareholder in the public accounting firm of Reznick, Fedder & Silverman, P.C. ("RFS"). The previous year Baggett had signed an employment agreement with HAW that contained noncompete and nonsolicit covenants as well as a liquidated damages clause. HAW sued Baggett and RFS in several counts, including breach of the noncompete and nonsolicit covenants. The court granted Baggett's motion for partial summary judgment regarding the alleged breach on the ground the covenants were unenforceable.

The issues are (i) what standard of scrutiny should be used in reviewing noncompete and nonsolicit covenants of shareholders in a professional corporation; (ii) whether the covenants here are enforceable; and (iii) whether the liquidated damages clause is an unenforceable penalty.

1. The Degree of Scrutiny.

Traditionally Georgia courts divide restrictive covenants into two categories for purposes of review: covenants ancillary to an employment contract, which receive strict scrutiny and are not blue-penciled, and covenants ancillary to a sale of business, which receive

much less scrutiny and may be blue-penciled.[1]

Citing *Rakestraw v. Lanier,*[2] the court in *Jenkins v. Jenkins Irrigation,*[3] stated in dicta that covenants "ancillary to a professional partnership agreement . . . have been treated by this court like employee covenants ancillary to employment contracts." Five years later the Supreme Court eschewed this approach and adopted a middle category of scrutiny for covenants ancillary to professional partnership agreements. *Rash v. Toccoa Clinic Med. Assoc.*[4] distinguished employment contracts from partnership agreements, holding that in the latter "the consideration flows equally among the contracting parties. For example, when an employee agrees to subject himself to possible future restrictions, he does so in exchange for the opportunity to have the job. He really gets nothing other than the opportunity to work in exchange for giving up this aspect of his freedom. On the other hand, here a partner has not only restricted himself, but he has also exacted from each of the other contracting parties a like restriction. . . .

"The next distinction between employment agreements and partnership agreements is that it is generally true in the employer/employee relationship that the employee goes into a transaction such as this at a great bargaining disadvantage. Such would not be expected to be the case in a professional partnership arrangement. . . ."[5] Using a lesser degree of scrutiny (but not the much lesser scrutiny accorded sale of business covenants), *Rash* found enforceable a covenant not to practice medicine or surgery within a radius of twenty-five miles of the city of Toccoa for three years.

Since *Rash,* this Court on at least four occasions has stated it was using the lesser degree of scrutiny to analyze noncompete covenants ancillary to professional partnership agreements (or their equivalents, e.g., professional association or professional corporation agreements).[6] *Pittman v. Harbin Clinic Prof. Assn.*[7] exemplified this

---

[1] *Watson v. Waffle House,* 253 Ga. 671 (2) (324 SE2d 175) (1985); *Jenkins v. Jenkins Irrigation,* 244 Ga. 95, 97-99 (2) (259 SE2d 47) (1979); see *Johnstone v. Tom's Amusement Co.,* 228 Ga. App. 296, 299 (3) (491 SE2d 394) (1997) (physical precedent only). Compare *Richard P. Rita Personnel &c. v. Kot,* 229 Ga. 314 (191 SE2d 79) (1972) (employment standard) with *Carroll v. Ralston & Assoc., P.C.,* 224 Ga. App. 862 (481 SE2d 900) (1997) (sale of business standard).

[2] 104 Ga. 188 (30 SE 735) (1898).

[3] 244 Ga. at 97-98 (2).

[4] 253 Ga. 322, 324-326 (2) (320 SE2d 170) (1984).

[5] Id. at 325.

[6] See *Delli-Gatti v. Mansfield,* 223 Ga. App. 76, 80-81 (3) (477 SE2d 134) (1996) (employment agreement had partnership option and therefore received less scrutiny); *McAlpin v. Coweta Fayette Surgical Assoc., P.C.,* 217 Ga. App. 669, 672 (2) (458 SE2d 499) (1995) (employment agreement contemplated partnership and thus received less scrutiny); *Pittman v. Harbin Clinic Prof. Assn.,* 210 Ga. App. 767, 769 (1) (437 SE2d 619) (1993) (covenants of shareholders in professional association received less scrutiny); *Roberts v. Tifton Med.*

distinction when it applied lesser scrutiny to uphold the noncompete covenants of the shareholder physicians in the professional association but applied strict scrutiny to strike down the broader covenants of nonshareholder physicians. *Pittman* also considered it unimportant that the covenants of the shareholders were found in employment agreements separate from the shareholders' agreement. None of these cases addressed whether covenants falling into this middle category may be blue-penciled or severed.[8]

At the time he signed the 1994 employment agreement containing the restrictive covenants, Baggett had been with HAW 17 years. He had been a shareholder of HAW for 13 of those years. He was an officer of the corporation and had often served on the firm's executive committee; in fact, just months prior to the signing he had completed an 18-month term as the managing partner in charge of running the entire firm. He was paid in excess of $300,000 (the second highest paid person in the 130-person firm) and was responsible for originating business in excess of $1.2 million. The other shareholders of HAW agreed to identical restrictive covenants, which inured to Baggett's benefit. After signing the agreement he continued to enjoy similar responsibilities and benefits. Baggett was in a bargaining position equivalent to that of HAW, which subjects the covenants to the lesser or middle degree of scrutiny.[9]

2. The Covenant Not to Compete.

The noncompete covenant provides: "The Employee covenants and agrees that, for a period of twenty-four (24) months following the effective date of his termination of employment with Corporation, regardless of the reason for such termination and regardless of whether such employment is terminated by the Employee or the Corporation, Employee will not, directly or indirectly, individually or as a partner, corporate employee, stockholder, consultant, officer, director, entity or advisor render or perform 'Accounting Services' (as hereinafter defined) within the counties of Fulton, DeKalb, Clayton, Gwinnett, Cobb, Fayette and Douglas in the State of Georgia."

"Accounting Services" are defined as "those same or similar types of accounting, tax or business services as were rendered or performed

---

*Clinic, P.C.*, 206 Ga. App. 612, 615-616 (426 SE2d 188) (1992) (employment agreements of shareholders in professional corporation received less scrutiny). Cf. *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.*, 213 Ga. App. 891 (447 SE2d 94) (1994) (court did not expressly reference lesser degree of scrutiny in reviewing covenants of professional corporation shareholders; however, covenant was so broad that it would not have survived under either standard).

[7] 210 Ga. App. at 769-771.

[8] See *Roberts*, 206 Ga. App. at 617 ("we need not decide whether it can or should be severed").

[9] See generally *Watson*, supra, 253 Ga. at 672 (the key inquiry in determining the level of scrutiny is the relative bargaining power of the parties).

by the Employee during the twelve (12) month period immediately prior to the effective date of the termination of the Employee's employment with the Corporation."

A contract in general restraint of trade or which tends to lessen competition is against public policy and is void.[10] A restrictive covenant in an employment contract, whether a nonsolicit covenant or a noncompete covenant, is considered in partial restraint of trade and will be enforced if reasonable.[11] "Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances. A three-element test of duration, territorial coverage, and scope of activity has evolved as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied."[12]

(a) *Duration.*

A two-year duration is often considered reasonable even under the strict scrutiny for employment covenants not to compete.[13] It is reasonable under the circumstances here.

(b) *Territorial Coverage.*

Baggett argues the seven-county limitation is unreasonable because, he claims, in the two years before he left HAW he performed no work in two of the counties (Clayton and Douglas) and he performed only a nominal amount of work in DeKalb County. He contends the seven counties simply represent the area serviced by HAW generally, not by him personally.[14] But during his career at HAW Baggett indisputably worked in all seven counties and in many other areas throughout the country and Georgia. There was also some evidence he worked in the three disputed counties during the two years prior to his departure.

*Sysco Food Svcs. v. Chupp*[15] held a similar covenant enforceable under the strict scrutiny standard. The covenant restricted activities in eleven counties, including two counties where the employee had not worked during his last eighteen months of employment. Upholding the covenant, *Sysco Food Svcs.* explained: "The goal of a non-

---

[10] Ga. Const. of 1983, Art. III, Sec. VI, Par. V (c); OCGA § 13-8-2.

[11] *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992).

[12] (Citations and punctuation omitted.) Id.; see *Watson*, supra, 253 Ga. at 673.

[13] See, e.g., *American Software USA v. Moore*, 264 Ga. 480 (1) (448 SE2d 206) (1994) (two-year duration reasonable, but not territorial limitation); *Chaichimansour v. Pets Are People Too, No. 2*, 226 Ga. App. 69 (485 SE2d 248) (1997) (two-year duration upheld); *Saxton v. Coastal Dialysis &c. Clinic*, 220 Ga. App. 805, 809 (3) (470 SE2d 252) (1996) (two-year duration upheld).

[14] See *Rollins Protective Svcs. v. Palermo*, 249 Ga. 138, 140 (1) (287 SE2d 546) (1982) (emphasizing difference between employee's territory and employer's territory).

[15] 225 Ga. App. 584, 586 (1) (484 SE2d 323) (1997).

competition covenant is to balance two competing rights: first, the employee's right to earn a living and his ability to determine with certainty the prohibited territory; second, the employer's interest in customer relationships created or furthered by its former employee on its behalf and its right to protect itself from the former employee's possible unfair appropriation of contacts developed while working for the employer. Under this analysis, an employer is permitted to include in such a covenant the territory in which the employee has in fact performed work, thus protecting itself from the unfair appropriation of good will and information acquired in the course of that work. The fact that Chupp's territory had not included two of the counties listed for approximately 18 months does not, of itself, render the agreement void for overbreadth.

"As the covenant stands, its description of Chupp's territory is more narrow than the territory in which Chupp actually worked for Sysco. The law does not require exact precision; it forbids unreasonably broad territorial coverage. The territorial restrictions in Chupp's agreement, while not precisely congruent with Chupp's territory at the time of his resignation, are reasonable because they include only territory in which he actually performed work for Sysco, and thus enabled Chupp to determine with certainty the territory included in the covenant. This is the reverse of the typically overbroad covenant describing a large territory with no indication that an employee ever performed work there."[16]

*Sysco Food Svcs.* is consistent with *Nat. Settlement Assoc. v. Creel*,[17] which held reasonable a territorial restriction in an employment contract that forbade competition in a radius of 200 miles of Atlanta. *Creel* explained that the employee worked in a "substantial portion" of the territory.[18] Taken to its logical conclusion, Baggett's argument would suggest that even if the restricted territory were only a single county, an employee could validly argue that although he worked throughout the county generally, he did not work in every municipality, precinct, or neighborhood in the county; thus, the restriction would be unenforceable. This is untenable. Even under strict scrutiny, restricting competition in seven contiguous counties in which the employee had worked at some point is reasonable, particularly where he had worked in a substantial portion of the seven-county area during the two years before his departure.

Cases decided under the lesser scrutiny of partnership agreements have consistently upheld territorial restrictions expressed in

---

[16] (Citations omitted.) Id. at 586-587.

[17] 256 Ga. 329, 331 (3) (b) (349 SE2d 177) (1986).

[18] Id. at 331; see *Pierce v. Industrial Boiler Co.*, 252 Ga. 558, 559 (1) (315 SE2d 423) (1984) (upholding 120-mile limitation because it pertained to the employee's territory).

terms of a certain number of miles radius of a city, even though the court cited no evidence that the departing partner worked in every nook and cranny of the forbidden area.[19] Unlike *Rollins Protective Svcs. v. Palermo*,[20] cases using this lesser scrutiny have also focused on whether the restricted area coincides with the territory served by the *employer*, not by the *employee*.[21] It is undisputed HAW did business throughout the seven counties.

Finally, *Rash* emphasized that, as here, the departing partner expressly agreed "that the covenant was 'reasonable' and that breach of the covenant 'would work harm' to the partnership. It is the policy of this state to uphold and protect valid contractual rights and obligations."[22]

(c) *Scope of Activity*.

Baggett was prohibited from rendering or performing the same or similar types of accounting, tax, or business services as he rendered or performed during his last year with HAW. Even under the strict scrutiny standard, noncompete covenants restricting an employee from rendering the same or substantially similar services he or she rendered at the former employer are generally reasonable.[23]

The restricted activities must be reasonably related to the business interests the employer seeks to protect.[24] Baggett is prohibited from providing accounting, tax, and business services for *any* organization, regardless of whether that organization is in competition with HAW or not. As conceded by HAW's 30 (b) (6) representative, Baggett would be prohibited from serving in-house as a chief financial officer for the Coca-Cola Company or for the Varsity restaurant in Fulton County. In such a position he would be rendering similar accounting, tax, and business services for those companies. Yet Coca-Cola, a soft drink company, and the Varsity, a fast food restaurant, are not in competition with HAW for public accounting services. Where courts have held an employee may reasonably be restricted from performing the same services, the contracts in those cases pertained only to services performed for potential competitors.[25]

---

[19] See *Rash*, supra, 253 Ga. at 323-324 (1) (upholding 25-mile radius); *McAlpin*, 217 Ga. App. at 673 (2) (upholding ten-county restriction); *Pittman*, supra, 210 Ga. App. at 769 (1) (upholding 30-mile radius).

[20] Supra.

[21] *Rash*, supra; *McAlpin*, 217 Ga. App. at 673 (employer had patients in all ten counties); *Pittman*, supra, 210 Ga. App. at 769 (the territory limited itself to the counties from which the employer drew its clients).

[22] 253 Ga. at 326 (3).

[23] *Sysco Food Svcs.*, supra, 225 Ga. App. at 585-586 (1); *Electronic Data Systems Corp. v. Heinemann*, 217 Ga. App. 816, 820 (8) (459 SE2d 457) (1995); *Moore v. Preferred Research*, 191 Ga. App. 26 (1) (381 SE2d 72) (1989).

[24] *Moore*, supra, 191 Ga. App. at 27.

[25] See *Sysco Food Svcs.*, supra, 225 Ga. App. at 584 ("competing business"); *Moore*,

But the strict scrutiny standard does not apply here. Cases applying lesser scrutiny have upheld covenants prohibiting physicians from practicing any kind of medicine in the restricted area, even though it was not limited to practicing medicine for competing organizations.[26] In comparison, the much lesser scrutiny afforded sale of business contracts would allow the covenant to restrict the defendant from working in the specified business area for any organization in any capacity.[27]

Citing *Singer v. Habif, Arogeti & Wynne, P.C.*;[28] *Dougherty, McKinnon & Luby*;[29] and *American Gen. Life &c. Ins. Co. v. Fisher*,[30] Baggett argues that the noncompete covenant prevented him from accepting unsolicited business and thus impinged on the public's ability to choose the professional services it prefers. All three of these cases were covenant not to *solicit* cases, not covenant not to *compete* cases. Baggett misapprehends the fundamental distinction between these two types of covenants and how they are analyzed.

A covenant not to compete, which is designed primarily to protect the employer's "investment of time and money in developing the employee's skills,"[31] prohibits the employee from performing competitive activities in a certain geographic area for a limited time. A covenant not to solicit, which is designed primarily to protect the employer's investment of time and money in developing customer relationships,[32] prohibits an employee from soliciting the employer's clients for a limited time and only requires a territorial restriction if the forbidden clients include the clients with whom the employee did not have a relationship prior to his departure.[33]

Based on these distinctions, the enforceable limits on what these two covenants may prohibit are somewhat different. A covenant not to compete by definition may preclude the employee from accepting related business (whether solicited or not) from any clients (whether previously contacted by him or not) if the employee is officed in, or is to perform the restricted activities in, the forbidden territory. A covenant not to solicit, on the other hand, may preclude the employee from soliciting the employer's clients (possibly just those clients located in a limited territory if the covenant does not restrict the for-

---

supra, 191 Ga. App. at 26 ("similar business").

[26] See *Delli-Gatti*, supra, 223 Ga. App. at 79 (3); *McAlpin*, supra, 217 Ga. App. at 670; *Pittman*, supra, 210 Ga. App. at 769 (1).

[27] *Dalrymple v. Hagood*, 246 Ga. 235 (271 SE2d 149) (1980).

[28] 250 Ga. 376, 377 (1) (297 SE2d 473) (1982).

[29] Supra, 213 Ga. App. at 894 (2) (b).

[30] 208 Ga. App. 282, 283-284 (1) (430 SE2d 166) (1993).

[31] *Pierce v. Industrial Boiler Co.*, supra, 252 Ga. at 559 (1).

[32] See *Singer*, supra, 250 Ga. at 377.

[33] *Mouyal*, 262 Ga. at 467-468.

bidden clients to those whom the employee had encountered while at the employer), but it may not preclude the employee from accepting unsolicited business from those clients.

*Vortex Protective Svc. v. Dempsey*[34] and *Darugar v. Hodges*[35] confused these distinctions and analyzed covenants not to compete under the criteria applicable to covenants not to solicit. The cases focused on the failure of the noncompete covenants to apply only to clients with whom the employee had had contact, and on the inability of the employee to accept business from unsolicited clients. Such an analysis applies to covenants not to solicit, not to covenants not to compete. *Chaichimansour v. Pets Are People Too, No. 2,*[36] subsequently overruled *Darugar* and *Vortex*, holding that a noncompete covenant could validly preclude "competition with respect to clients with whom the employee had not had contact while working for the employer." *Chaichimansour* held valid a covenant not to compete precluding the employee from working as a veterinarian in a limited territory, even though such necessarily prevented the employee from accepting unsolicited business.

*Rash* reasoned: "If it be argued that the enforcement of this restrictive covenant would be contrary to public policy because it would limit the right of potential patients in the Demorest and Habersham County area to avail themselves of Dr. Rash's services, it can be argued with at least equal conviction that this would afford countless other people in other areas, both in and outside of the state, the opportunity to have a physician in their areas. There is no reason to conclude that the obstetrical and gynecological needs of persons within a 25-mile radius of Toccoa are any greater than in many other areas of this and other states, nor is there any reason to conclude that the need for the appellant's services, in the context of this case, is sufficient to outweigh the law's interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations."[37]

Citing *Rash, Delli-Gatti*[38] stated "the local public could still visit [employee] should she elect to practice in the counties adjoining [the forbidden territory]."[39] The defendant employee may even make phone calls into the proscribed area from her office outside the area.[40] The key in covenant not to compete cases is that the forbidden ser-

---

[34] 218 Ga. App. 763 (463 SE2d 67) (1995).

[35] 221 Ga. App. 227, 229 (471 SE2d 33) (1996).

[36] (Citations omitted.) 226 Ga. App. at 70.

[37] (Citation omitted.) 253 Ga. at 326.

[38] 223 Ga. App. at 80.

[39] See *McAlpin*, 217 Ga. App. at 674 (employee may treat former patients from the proscribed area so long as the treatment is done outside the proscribed area).

[40] *Pittman*, supra, 210 Ga. App. at 769.

vices or activities cannot be performed in a certain territory; it is not relevant who the clients are or what activities, whether soliciting or otherwise, occur outside the territory.[41]

The court erred in holding the covenant not to compete unenforceable.

3. The Covenant Not to Solicit.

The nonsolicit covenant provides: "The Employee covenants and agrees that, for a period of twenty-four (24) months following the effective date of his termination of employment with Corporation, regardless of the reason for such termination and regardless of whether such employment is terminated by the Employee or the Corporation, Employee will not, directly or indirectly, on Employee's own behalf or on behalf of any person, firm, partnership, association, corporation or business organization, entity or enterprise, take any action to divert, solicit, or contact any 'Client' (as hereinafter defined) for the purpose of rendering or performing or with a view to rendering or performing 'Accounting Services.' "

"Client" is defined as "any one or more persons, firms, trusts, partnerships, corporations, or other entities for whom or for which the Employee rendered or performed 'Accounting Services' during the twelve (12) month period immediately prior to the effective date of the termination of the Employee's employment with the Corporation, which accounting services so rendered or performed by the Employee entitled the Employee . . . to a credit of five percent (5%) or more of the total 'Billings' to such client. . . ."

The trial court held the covenant not to solicit unenforceable on the ground the covenant not to compete was unenforceable. Viewed on its own merits, the covenant not to solicit is enforceable.

(a) *Duration*.

Even under strict scrutiny, a two-year limitation in a covenant not to solicit has been held reasonable.[42] It is reasonable in this instance.

(b) *Territorial Coverage*.

When strictly scrutinized, a covenant not to solicit is generally valid if it prohibits soliciting clients of the employer whom the employee had contacted during her employment with the employer, regardless of whether it has a territorial restriction.[43] If the covenant prohibits soliciting all clients of the employer, then it must have a

---

[41] See also *McAlpin*, supra, 217 Ga. App. at 673 (upholding covenant not to practice medicine or surgery in ten counties); *Pittman*, supra, 210 Ga. App. at 769 (upholding covenant not to practice medicine in 30-mile radius of Rome). Compare *Fisher*, supra, 208 Ga. App. at 283-284 (striking down covenant not to solicit that prevented employee from accepting unsolicited applications).

[42] *U3S Corp. of America v. Parker*, 202 Ga. App. 374, 378 (2) (b) (414 SE2d 513) (1991).

[43] *Mouyal*, supra, 262 Ga. at 468.

territorial restriction "specified and closely tied to the area in which the employee actually worked."[44]

Because Baggett's covenant was subject to the lesser degree of scrutiny, and because it prohibited solicitation only of the clients of HAW for whom Baggett had done substantial work, it could lack a territorial restriction and still be valid.

(c) *Scope of Activity*.

Upon the application of strict scrutiny, prohibiting the solicitation and diversion of clients is reasonable as is prohibiting the contact of clients.[45] Such verbs, particularly when preceded by the phrase "take any action to," require some affirmative, initiating action by Baggett, and would not preclude him from accepting unsolicited business from the forbidden clients.[46]

Because both the noncompete and the nonsolicit covenant are enforceable, it is unnecessary to determine whether the restrictive covenants in this agreement may be blue-penciled.[47]

4. The Liquidated Damages Clause.

The clause provides: "The Corporation and the Employee acknowledge and agree that the injury and/or damages caused by the breach or threatened breach of the covenants [not to compete and not to solicit] will be difficult, if not impossible, to accurately estimate. As such, Employee covenants and agrees that if he violates the covenants [not to compete or not to solicit], the Corporation shall be entitled to an accounting and payment by Employee to Corporation, as liquidated damages, of all compensation, commissions, remuneration, or other benefits that Employee directly or indirectly has realized and/or may realize as a result of, growing out of, or in connection with, any such violation. In addition to the accounting and payment as provided in the immediately preceding sentence, if a violation of the covenants [not to compete or not to solicit] are in connection with or with regard to a 'Client', the Employee, in addition to the payment as provided in the immediately preceding sentence, shall also pay to Corporation, as liquidated damages, an amount equal to one and one-half (1-1/2) times all fees billed by Corporation . . . for accounting services . . . rendered to the Client during the twelve (12) month

---

[44] *Chaichimansour*, supra, 226 Ga. App. at 71.

[45] See *Mouyal*, 262 Ga. at 464 ("solicit, contact"); *Singer*, 250 Ga. at 377 ("solicitation or diversion of clients"); *Marcoin, Inc. v. Waldron*, 244 Ga. 169, 171 (259 SE2d 433) (1979) ("solicit" or "divert"); *Sysco Food Svcs.*, 225 Ga. App. at 584 ("solicit or attempt to divert"); *Paul Robinson, Inc. v. Haege*, 218 Ga. App. 578 (462 SE2d 396) (1995) ("would not contact any customer").

[46] See *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (455 SE2d 601) (1995) (solicit means to take affirmative action). Compare *Singer*, supra, 250 Ga. at 377 (covenant not to solicit struck down because it expressly prohibited employee from accepting unsolicited business); *Fisher*, supra, 208 Ga. App. at 283-284 (same).

[47] See *Roberts*, 206 Ga. App. at 617.

period immediately prior to the effective date of the termination of the Employee's employment with the Corporation." The agreement provides that this clause is severable if declared invalid.

The court held that the liquidated damages clause was itself a restrictive covenant and therefore was to be stricken on the grounds the noncompete provision was unenforceable. The court also held that even if not a restrictive covenant, the clause was an unenforceable penalty.

Unlike the liquidated damages clause in *Dougherty, McKinnon & Luby*,[48] this clause does not contain a restrictive covenant within its terms. It simply sets forth one form of damages HAW could pursue if Baggett violated the covenant not to compete or the covenant not to solicit. The court erred in holding the clause itself was a restrictive covenant.

On the other hand, the court correctly determined the clause was a penalty. "In deciding whether a contract provision is enforceable as liquidated damages, the court makes a tripartite inquiry to determine if the following factors are present:

"First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss."[49]

Under the clause, if Baggett violates the covenant not to solicit by contacting an HAW client with a view to providing accounting services, he must pay HAW 150 percent of that client's prior year's billings at HAW, even if he is unsuccessful in persuading the client to leave HAW. Under this scenario, even though HAW would have experienced no actual damages, it would be entitled to the liquidated damages. The entire provision is an unenforceable penalty. The remainder of the contract stands.[50]

5. Other Motions.

Presumably because it found the noncompete covenant unenforceable, the court did not rule on HAW's motion for partial summary judgment that Baggett had violated that covenant. Baggett, who operates out of an office in Forsyth County, has testified he has performed no accounting, tax, or business services in the forbidden counties. There is also evidence he has. There is no ruling by the trial court for us to review.[51]

---

[48] 213 Ga. App. at 891-892.

[49] (Citations and punctuation omitted.) *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976).

[50] See *Kem Mfg. Corp. v. Sant*, 182 Ga. App. 135, 140 (4) (355 SE2d 437) (1987) (in a severable contract, the failure of a distinct part does not void the remainder).

[51] *Alcovy Properties v. MTW Investment Co.*, 212 Ga. App. 102, 103 (2) (441 SE2d 288) (1994).

The court did deny that portion of HAW's motion for partial summary judgment as to Baggett's breach of the 60-day notice provision in his employment contract, correctly determining that there are questions of material fact on this issue. Although Baggett gave the 60-day notice, there is evidence HAW immediately (i) asked him not to return to the office, (ii) terminated his secretary, (iii) changed the office's locks and access code, and (iv) informed the clients whom Baggett serviced that he had resigned. Baggett claims these actions amounted to a constructive discharge and waiver of the 60-day notice. A jury must decide.

The court granted defendants' motion for partial summary judgment as to any claims for RFS' alleged breach of fiduciary duties, and it denied summary judgment to defendants as to any claims for Baggett's breach of fiduciary duties. These portions of the judgment stand unreviewed, as they are not enumerated as error.

*Judgments affirmed in part and reversed in part. Andrews, C. J., Birdsong, P. J., Smith, Ruffin and Eldridge, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the judgment of reversal in this action to enforce noncompetition provisions in a written contract of professional employment brought by the plaintiff accounting firm, Habif, Arogeti & Wynne, P.C. ("HAW") against defendant Kenneth E. Baggett and his new employer, the Maryland accounting firm Reznick, Fedder & Silverman, P.C. ("RFS"). Pretermitting whether the case sub judice is controlled adversely to plaintiff by the decision of the Supreme Court of Georgia in *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376 (1) (297 SE2d 473), my view of the proper judgment is merely to vacate the decision of the trial court and remand for reconsideration of defendants' motion for summary judgment in light of this Court's most recent authorities.

HAW alleged that defendant Baggett breached his contract and fiduciary duties of loyalty and good faith, "acting individually and in concert and collusion with [RFS], [in that he] conspired to and did contact, solicit, and divert both employees and clients of HAW. . . ." The complaint further alleges that defendant Baggett "fail[s] to devote his full time and best efforts to the practice of public accounting on behalf of HAW, and has accepted other gainful employment with [RFS], without the consent of HAW, and despite the fact he is still an employee of HAW." RFS allegedly "wrongfully interfered in the contractual relations between HAW and its key clients and employees, . . . encourag[ing defendant] Baggett and other HAW employees, to breach their fiduciary duties and contractual obligations to HAW. . . ." Count 2 alleges defendant Baggett fraudulently

continued to accept compensation from HAW without the present intent to fulfill his contractual obligations. Count 3 alleges that defendant Baggett breached the duties of utmost trust, loyalty and good faith owed to HAW in Baggett's roles as an agent for, shareholder in, and officer of the professional corporation. Count 4 alleges conspiracy; Count 5 alleges tortious interference with contractual relations; and Count 6 seeks punitive damages and attorney fees.

The employment contract contained the following paragraph: "10 . . . RESTRICTIVE COVENANT . . . (a) In express consideration of the covenants and agreements contained herein, and as an essential part of the consideration to induce the Corporation to enter into this Contract with Employee [defendant Baggett,] Employee covenants and agrees as follows . . . (i) The Employee covenants and agrees that, for a period of twenty-four (24) months following the effective date of his termination of employment with Corporation, regardless of the reason for such termination and regardless of whether such employment is terminated by the Employee or the Corporation, Employee will not, directly or indirectly, individually or as a partner, corporate employee, stockholder, consultant, officer, director, entity or advisor render or perform 'Accounting Services' (as hereafter defined) within the counties of Fulton, DeKalb, Clayton, Gwinnett, Cobb, Fayette and Douglas in the State of Georgia." Subpart 10 (a) (ii) contained defendant Baggett's promise not to "take any action to divert, solicit, or contact any 'Client' (as hereafter defined) for the purpose of rendering or performing or with a view to rendering or performing 'Accounting Services.'" Defendant Baggett expressly "acknowledge[d] that the restrictive covenants contained in this subparagraph 10 (a) will not constitute a total restraint on the Employee's ability to earn a living. . . . The term 'Client' shall mean and include any one or more persons, firms, trusts, partnerships, corporations, or other entities for whom or for which the Employee rendered or performed 'Accounting Services' during the twelve (12) month period immediately prior to the effective date of the termination of the Employee's employment with the Corporation," where defendant Baggett's accounting services amounted to "five percent (5%) or more of the total 'Billings' to such client . . ." for the immediately preceding fiscal year. Subparagraph 10 (f) provides that, in the event defendant Baggett violates the restrictive covenants, plaintiff HAW shall be entitled to "all compensation, commissions, remuneration, or other benefits . . ." realized by defendant Baggett as liquidated damages. As additional liquidated damages respecting a breach of the restrictive covenant involving a former HAW client, defendant Baggett agreed to pay "an amount equal to one and one-half (1-1/2) times all fees billed . . ." by plaintiff HAW for the 12-

month period immediately preceding defendant Baggett's termination.

Defendants' joint answer denied the material allegations but admitted the chronology of events, whereby defendant Baggett properly terminated his former employment relation with plaintiff by giving on July 1, 1995, the 60 days written notice contemplated in the 1994 written employment agreement. Defendants contended that plaintiff itself breached the written agreement upon receipt of his written termination, constructively firing defendant Baggett by firing his secretary, informing his clients that he had left the firm, and informing him not to return to the HAW offices. In answers to interrogatories, defendants further admitted that defendant Baggett "is an employee and equity principal of [defendant] RFS[,] at its office located at 107 West Courthouse Square, Cummings [sic], Georgia. . . . In addition to [defendant] Baggett, some other former employees of Plaintiff are currently employed by [defendant] RFS. . . . Similarly, some former clients of Plaintiff are currently clients of RFS."

Relying on *Vortex Protective Svc. v. Dempsey*, 218 Ga. App. 763 (463 SE2d 67), the trial court concluded the restrictive covenants are overbroad and granted defendants' motion for summary judgment. This appeal followed.

The judgment of the trial court should, in my view, be vacated and the case remanded for reconsideration of the motion for summary judgment in light of the recent whole court decision in *Chaichimansour v. Pets Are People Too, No. 2*, 226 Ga. App. 69 (485 SE2d 248), cert. denied, where this Court affirmed the validity of a restrictive covenant involving members of a learned profession entered into among parties of roughly equal bargaining power. But it is further my view that, the applicability of this recent authority is not necessarily dispositive of whether all the noncompetition provisions in the case sub judice should be enforced, and so I respectfully dissent from the judgment of outright reversal.

DECIDED MARCH 17, 1998

*Alembik, Fine & Callner, Lowell S. Fine*, for appellant.
*Alston & Bird, Lisa H. Cassilly, Robert H. Buckler*, for appellees.